284 N.J. Super. 381 (1995)
665 A.2d 753
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION, PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
STANDARD TANK CLEANING CORP., STANDARD MARINE SERVICES, INC., EVELYN BERMAN FRANK, AND PETER MALCOLM FRANK, DEFENDANTS-CROSS-RESPONDENTS, AND JANE KRESCH AND SUSAN FRANK, DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS, AND ESTATE OF NATHAN BERMAN AND ESTATE OF MORRIS BERMAN, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted June 14, 1995.
Decided September 29, 1995.
*389 Before Judges SKILLMAN, WALLACE and KLEINER.
Gelenitis & McGuire, attorneys for appellants-cross-respondents Jane Kresch and Susan Frank and for cross-respondent Peter Malcolm Frank (Paul Gelenitis, on the brief).
Deborah T. Poritz, Attorney General of New Jersey, attorney for respondent-cross-appellant (Mary C. Jacobson, Assistant Attorney General, of counsel; Masha D. Rozman, Deputy Attorney General, on the brief).
*390 No briefs have been filed on behalf of cross-respondents Standard Tank Cleaning Corp., Evelyn Berman Frank and Standard Marine Services, Inc.
The opinion of the court was delivered by SKILLMAN, J.A.D.
This appeal requires us to determine the circumstances under which officers and directors of a corporation may be held personally liable for violations of the Water Pollution Control Act (WPCA), N.J.S.A. 58:10A-1 to -43, and the fairness of the trial procedures pursuant to which the appellant corporate officers were held liable for substantial monetary penalties. The other significant issue presented by this appeal is whether the WPCA authorizes the Department of Environmental Protection (DEP) to obtain an award of counsel fees for the time expended by Deputy Attorneys General in an enforcement action.
Defendant Standard Tank Cleaning Corporation (STCC) operated a treatment facility which cleaned hazardous materials stored in barges that were used to remediate oil spills on the Kill Van Kull. STCC cleaned the hazardous residue remaining in the barges by filtering the water in the barge, treating the residue, filtering the material again, and then discharging into the waterway.
On June 30, 1986, the DEP issued a New Jersey Pollution Discharge Elimination System (NJPDES) permit to STCC, which became effective on September 1, 1986.
On September 16, 1988, the DEP issued an administrative order assessing a civil administrative penalty of $175,000 upon STCC for violations of the permit. We affirmed this order in an unreported opinion, In re Standard Tank Cleaning Corp., A-2334-88T3 (Oct. 3, 1989), and the Supreme Court denied STCC's petition for certification. 121 N.J. 618, 583 A.2d 317 (1990).
The DEP filed this suit on May 9, 1990, alleging that STCC had failed to pay the $175,000 administrative penalty and had committed *391 various additional violations of its NJPDES permit between March 1988 and December 1989. The DEP sought to enjoin STCC from operating its facility in violation of the 1988 administrative order and the permit. The complaint also sought an order requiring STCC to pay the $175,000 penalty and the imposition of additional penalties for continuing violations of the administrative order and permit. The sole defendant named in the original complaint was STCC.
The court conducted a bench trial over a five-day period between June 14, 1990, and August 1, 1990. On the first trial day, the court ordered STCC to pay the $175,000 administrative penalty imposed in 1988, and STCC complied a few days later. The DEP filed an amended complaint during trial that alleged additional violations in the period from January 1990 through April 1990. This amended complaint, like the original complaint, named only STCC as a defendant.
At the conclusion of the trial, the court issued an oral opinion in which it concluded that STCC had violated the effluent limitations contained in its NJPDES permit on 137 occasions between May 1988 and April 1990. The court also concluded that STCC had violated the reporting requirements of its permit on 15 occasions between May 1988 and April 1990.
On September 14, 1990, the DEP moved for leave to file a second amended complaint, alleging additional violations that had occurred during the pendency of the action. This complaint also sought to add as defendants STCC's parent company, Standard Marine Services, Inc. (Standard Marine), and various officers and directors of STCC, including Evelyn Frank, Jane Kresch, Peter Frank and Susan Frank.
The court granted this motion, but by an order entered on November 9, 1990, further provided that the newly added "[d]efendants shall not be required to file an answer" and that "all further action on the amended complaint [shall be] stayed pending further order of [the] court." This order also stated that "[t]he penalty phase of trial shall commence on December 13, 1990," and that *392 after it is concluded, "the trial shall continue on the liability issue of the original defendants." Due to these provisions, the active involvement in the litigation of the newly named defendants, including Susan Frank and Kresch, was delayed for a substantial period of time.
The order entered on November 9, 1990, seemed to indicate that the next phase of the case would involve solely the determination of penalties for the previously adjudicated violations. However, when the trial ultimately resumed on April 9, 1991, the DEP also presented evidence relating to the additional violations alleged in the second amended complaint, even though the only defendant then participating in the proceedings was STCC. Although a trial on these alleged additional violations was conducted over a two-day period, the trial judge retired without making any findings of fact or conclusions of law and without entering any further order.
The case was then transferred to another judge, but there was a delay of nearly two years until the trial continued on June 1, 1993. It was at this stage of the litigation that the DEP first proceeded against the other defendants who had been added to the case by the order of November 9, 1990. Over these defendants' objections, the DEP read into the record substantial portions of the testimony it had presented in the prior trial proceedings involving only STCC, including testimony by witnesses who were not offered for cross-examination at this resumed trial.
At the close of the DEP's case, the court granted motions for dismissal by Evelyn Frank, Peter Frank and Standard Marine, but denied motions for dismissal by Susan Frank and Kresch. Thereafter, the court concluded that STCC had violated its permit 20 times which, added to the 152 violations adjudicated on August 1, 1990, totalled 172 violations. The court also concluded that Susan Frank and Kresch were liable for those 20 violations, but not for the 152 violations adjudicated prior to their joinder in the litigation. The court assessed STCC penalties of $3,925,000 for 157 permit violations ($25,000 for each one) and $41,825 for 15 reporting violations. Susan Frank and Kresch were each assessed *393 penalties of $500,000 ($25,000 for each of the 20 permit violations). Finally, STCC, Kresch, and Frank were held jointly and severally liable for a $266,000 penalty based on the late payment of the 1988 administrative penalty. After a post-trial hearing, the court denied the DEP's application for an award of litigation costs.
Susan Frank and Kresch appeal from the part of the judgment imposing substantial penalties upon them individually, arguing that (1) the order permitting the DEP to file a second amended complaint adding them as defendants after the completion of a trial on liability against STCC violated the entire controversy doctrine; (2) the late amendment of the complaint adding them as defendants prejudiced their defense and consequently denied them due process; (3) the trial court erred in concluding that their participation in STCC's management provided a sufficient foundation for the imposition of personal liability for the corporation's violations of the WPCA; and (4) the court did not properly weigh all relevant factors in assessing penalties upon them individually. The DEP cross appeals, arguing that the trial court erred in dismissing its claims against Evelyn Frank, Peter Frank and Standard Marine and in denying its application for various litigation expenses, including counsel fees. The DEP also argues that the trial court erred in failing to find various additional violations by the defendants.
We conclude that the trial court did not abuse its discretion in permitting the DEP to amend its complaint to add Susan Frank and Kresch as defendants. However, we also conclude that the trial procedures under which Frank and Kresch were found personally liable for STCC's violations violated the New Jersey rules of evidence and were fundamentally unfair. Therefore, the judgments against Frank and Kresch must be reversed and the case remanded for a new trial against these defendants. On the State's cross-appeal, we conclude that the trial court properly dismissed the DEP's complaint against Standard Marine but that it erred in dismissing Evelyn Frank and Peter Frank. Therefore, the case also must be retried with respect to these defendants. *394 We affirm the trial court's order denying the DEP's application for an award of counsel fees for time expended by Deputy Attorneys General in handling this litigation. Finally, we agree with the DEP that the trial court erred in refusing to impose additional penalties for violations of the WPCA that also constituted violations of administrative and/or court orders. Therefore, the matter must be remanded for the imposition of additional penalties upon STCC.

I
On their appeal, Susan Frank and Jane Kresch argue that the trial court violated the entire controversy doctrine by granting the DEP's motion for leave to file a second amended complaint naming them as defendants after a trial as to STCC's liability had been completed. On its cross-appeal, the DEP argues that the trial court erred in limiting Frank's and Kresch's liability to violations that were adjudicated after the second amended complaint was filed. Since these arguments both involve the DEP's late joinder of Frank and Kresch as defendants, it is appropriate to consider them together.
The DEP's original complaint, which alleged violations occurring between May 1988 and December 1989, and its first amended complaint, which alleged violations occurring between January 1990 and April 1990, named only STCC as a defendant. However, the DEP charged that STCC continued to commit violations during the period between the filing of the original complaint on May 9, 1990, and the conclusion of the first phase of the trial on August 1, 1990. Consequently, the DEP moved for leave to file a second amended complaint which, among other things, alleged that STCC had committed twenty additional violations during the pendency of the action. See R. 4:9-4. This second amended complaint also sought to join various additional defendants, including Frank and Kresch.
The trial court granted the DEP's motion for leave to file this second amended complaint. In rejecting the argument that it *395 would be unfair to join additional defendants after substantial portions of the case had already been tried, the court stated:
I am satisfied that substantial justice dictates that the amendment be granted to permit DEP to pursue its case against those parties it feels are responsible for the violations in issue. At the same time, I will ensure as best I can that defendants will not be prejudiced and will afford defendants an opportunity to pursue the same kind of discovery that was afforded the original defendants to meet DEP's proof against it in Court with a full opportunity for direct and cross examination.
The applicability of the entire controversy doctrine turns on whether "parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions." DiTrolio v. Antiles, 142 N.J. 253, 268, 662 A.2d 494 (1995) (emphasis added); accord Wm. Blanchard Co. v. Beach Concrete Co., 150 N.J. Super. 277, 293-94, 375 A.2d 675 (App.Div.), certif. denied, 75 N.J. 528, 384 A.2d 507 (1977). Therefore, the entire controversy doctrine only bars the maintenance of a subsequent lawsuit arising out of the same overall controversy as an earlier lawsuit, see DiTrolio v. Antiles, supra, 142 N.J. at 271, 662 A.2d 494, and has no applicability to a motion for leave to file an amended complaint prior to the entry of final judgment.
When the DEP moved for leave to file a second amended complaint alleging additional violations and adding new parties, a final judgment had not yet been entered. Although the trial court had entered a series of injunctive orders against STCC, it had not yet adjudicated any of the DEP's penalty claims against STCC. Therefore, the entire controversy doctrine did not apply to the court's consideration of the DEP's motion.[1]
*396 Instead, the DEP's motion was governed by Rule 4:9-1, which provides that once a responsive pleading has been served, "a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice." The determination whether to grant such relief is committed to the sound discretion of the trial court, DuWel Prods. v. United States Fire Ins. Co., 236 N.J. Super. 349, 364, 565 A.2d 1113 (App.Div. 1989), certif. denied, 121 N.J. 617, 583 A.2d 316 (1990), which must consider "what course of action will further the interests of justice." Brower v. Gonnella, 222 N.J. Super. 75, 81, 535 A.2d 1006 (App.Div. 1987). Consequently, if a claim does not arise until after a complaint has been filed, leave to amend to add that claim should be granted as of course so long as the moving party has exercised due diligence and the amendment will not cause the trial to be unduly delayed or complicated.
The DEP did not become aware of any of the additional alleged violations asserted in its second amended complaint until late June at the earliest, and even then the violations were not brought directly to the attention of the DEP representatives and Deputy Attorney General responsible for handling this litigation. Consequently, the DEP's delay in moving for leave to amend its complaint until after the conclusion of the first phase of the trial on August 1, 1990, was not unreasonable. Moreover, since further trial court proceedings had to be conducted in any event in order to determine the amount of penalties to be assessed upon STCC, the trial court did not abuse its discretion in allowing the DEP to pursue its additional claims in this lawsuit rather than by a separate action. See Brown v. Brown, 208 N.J. Super. 372, 381-82, 506 A.2d 29 (App.Div. 1986).
We turn next to the more difficult question of whether the trial court abused its discretion in allowing the DEP to join additional defendants, including Frank and Kresch, after the trial of the first phase of the case had been completed. Frank and Kresch argue on appeal that they were "severely prejudiced" by their late joinder in the action:

*397 Had they been named at the outset, they could have settled, defended with their own counsel, resigned from Standards' employ to avoid personal liability, or engaged in other efforts to avoid an adjudication of liability and penalties. The actual prejudice is emphasized by the fact that Frank and Kresch were the only two Standard employees who testified at the trial on liability in June and July 1990, and they were the only two employees found liable for statutory penalties.
We note that the Supreme Court recently relied upon similar considerations in concluding that the entire controversy doctrine barred an action against four doctors who had not been named as defendants in a prior action against a hospital with which they were affiliated:
There is no doubt that defendants are now disadvantaged because they were not parties to the first litigation. Each of the four defendant-doctors were deposed as witnesses during the discovery period in plaintiff's suit against the Hospital. Although they were represented by counsel during these depositions, had they been made parties to the original action, they might have approached the depositions and discovery process differently. They would have been able actively to participate in discovery by objecting to interrogatories and requests for documents.
[DiTrolio v. Antiles, supra, 142 N.J. at 273, 662 A.2d 494.]
However, we perceive a significant difference between a plaintiff seeking to avoid the sanction of dismissal for a violation of the entire controversy doctrine and seeking to amend a complaint to add previously omitted defendants. Once a final judgment has been entered, the entire controversy doctrine may create a reasonable expectation of finality on the part of parties who were not joined in the original action. See DiTrolio v. Antiles, supra, 142 N.J. at 276, 662 A.2d 494. However, an unnamed party cannot reasonably rely upon his or her non-joinder prior to the entry of a final judgment signifying the conclusion of litigation, because a plaintiff, at least in the early stages of litigation, may "readily" amend a complaint to name additional defendants. Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 328, 662 A.2d 523 (1995). Moreover, the party joinder requirements of the entire controversy doctrine rest not only upon considerations of fairness to unnamed parties with a material interest in the litigation but also the avoidance of piecemeal decisions and the promotion of judicial efficiency. DiTrolio v. Antiles, supra, 142 N.J. at 267, 662 A.2d 494. Although these policies also may be implicated in a *398 court's consideration of a motion to amend a complaint to add new parties, especially if the motion is made on the eve of trial or after a case has been partially tried, they have more weight when a case has been concluded by entry of the final judgment.
We are satisfied that the trial court did not abuse its discretion in granting the DEP's motion to amend its complaint to add Susan Frank and Kresch as defendants with respect to alleged violations that had not yet been adjudicated. Since the court granted the DEP's motion to join Frank and Kresch at the same time as it permitted the complaint to be amended to assert additional claims based on the alleged violations that occurred from May through August of 1990, the DEP had not as of that time presented any evidence or even conducted any discovery regarding those newly alleged violations. Consequently, the DEP's joinder of Frank and Kresch as to those violations did not require any substantial duplication of pretrial or trial proceedings previously conducted. In fact, the trial court could have denied the DEP's motion to file a second amended complaint and instead directed the DEP to pursue any claims that had arisen subsequent to the filing of the complaint by means of a separate action. See Brown v. Brown, supra, 208 N.J. Super. at 381-82, 506 A.2d 29. In that event, there would have been no impediment to the DEP naming not only STCC but also Susan Frank and Kresch as defendants. Furthermore, STCC's filing of a bankruptcy petition on September 18, 1990, after the conclusion of the first phase of the trial on August 1, 1990, raised a serious question whether the DEP would be able to collect whatever penalties the court ultimately imposed upon STCC. This circumstance provided a reasonable basis for the DEP seeking to join other possibly liable parties who had been omitted from the original complaint.
However, we are also satisfied that the trial court did not abuse its discretion in allowing the DEP to proceed against Frank and Kresch only with respect to violations that had not yet been adjudicated. Although the joinder of Frank and Kresch was not barred by the entire controversy doctrine, the same policies *399 that underlie that doctrine also support the trial court's decision not to allow the DEP to proceed against these defendants for violations that had already been adjudicated as to STCC. The purposes of the entire controversy doctrine are threefold:
(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.
[DiTrolio v. Antiles, supra, 142 N.J. at 267, 662 A.2d 494.]
If the DEP had been allowed to proceed against Susan Frank and Kresch for violations that had been previously adjudicated against STCC, the court would have been required to rehear much of the same evidence it had already heard in the first phase of the trial and to readjudicate issues it had already adjudicated as to STCC. Such an adjudicatory process would have involved the same kind of inefficiency, delay and piecemeal decision-making process that the entire controversy doctrine seeks to avoid. Moreover, the court's prior adjudication of liability against STCC in a proceeding to which Frank and Kresch had not been parties would have created a serious risk of prejudgment, or at least the appearance of prejudgment, in the subsequent proceedings against Frank and Kresch.
Therefore, the trial court did not abuse its discretion in permitting the joinder of Frank and Kresch as defendants after the case had already been partially tried but limiting their joinder to alleged violations that had not yet been adjudicated.

II
Although Susan Frank and Kresch were properly joined as defendants, we conclude that the proceedings pursuant to which their individual liability was adjudicated violated the New Jersey rules of evidence and were fundamentally unfair.[2] When the trial *400 of this case resumed on April 9, 1991, after the State had been granted leave to file its second amended complaint, Frank and Kresch had not yet entered appearances. These defendants' absence would have posed no problem if the proceedings had been limited, as the court had indicated in the November 9, 1990 order, to a determination of the appropriate penalties to be assessed upon STCC for the previously adjudicated violations. However, contrary to that order, the DEP proceeded at the resumed trial to introduce evidence of the alleged violations that had occurred from May through August 1990. Moreover, when the trial continued in May 1993 after Frank and Kresch had filed answers, the DEP, over these defendants' vigorous objections, relied heavily upon evidence introduced during the first eight days of trial to establish their personal liability for STCC's violations. The trial court permitted this evidence to be admitted against Frank and Kresch on the theory that their interest in the litigation was coextensive with that of STCC, which had defended the action in 1990 and 1991:
[T]he Court cannot see at this point any diversity or conflict of interest between the responsible corporate officials and the company itself. If ... the corporation ... is found liable for penalties, the responsible corporate officials, in this Court's view, can't have any argument contrary to the argument that the corporation has. The corporation is or is not responsible. And the responsible corporate officials rise or fall with the corporation.
Based upon this ruling, the DEP introduced approximately two hundred pages of testimony from the prior trial proceedings in which Frank and Kresch had not participated except as witnesses.
Under Evidence Rule 63(3)(a)(ii) (now N.J.R.E. 804(b)(1)(B)), effective at the time of trial, testimony adduced in a prior civil proceeding offered in a subsequent proceeding against a non-party to the prior proceedings is admissible only if the declarant is "unavailable as a witness" and "the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive *401 similar to that which the adverse party has in the action in which the testimony is offered." The DEP failed to make any showing that the witnesses whose testimony in the prior proceedings was admitted against Frank and Kresch were "unavailable." Furthermore, even though STCC had the same interest as these individual defendants in defending against the DEP's allegations of violations of the WPCA, STCC had no evident interest in contesting evidence that would support the imposition of personal liability upon Frank and Kresch (i.e., that they were active participants in the operations of the corporation and would have been a position to prevent the violations). Therefore, the DEP failed to satisfy either of the basic prerequisites for the admission of evidence pursuant to Evidence Rule 63(3)(a)(ii).
Moreover, the testimony adduced in the prior proceedings was so essential a part of the DEP's evidence against Frank and Kresch that its erroneous admission deprived them of a fair trial. The liability of Frank and Kresch was predicated upon N.J.S.A. 58:10A-3(l), which defines the term "person" for the purpose of an enforcement action under N.J.S.A. 58:10A-10 as including "any responsible corporate official." The WPCA does not define the term "responsible corporate official," and the legislative history provides no illumination as to its meaning. However, the Supreme Court of the United States has developed the concept of the "responsible corporate officer" as a basis for the imposition of individual liability upon corporate officers in cases involving the Federal Food, Drug and Cosmetics Act, 21 U.S.C.A. § 301 to § 395. In United States v. Dotterweich, 320 U.S. 277, 284, 64 S.Ct. 134, 138, 88 L.Ed. 48, 53 (1943), the Court stated:
The offense is committed ... by all who do have such a responsible share in the furtherance of the transaction which the statute outlaws....
In United States v. Park, 421 U.S. 658, 672-75, 95 S.Ct. 1903, 1911-13, 44 L.Ed.2d 489, 501-02 (1975), the Court further explained this concept:
[I]n providing sanctions which reach and touch the individuals who execute the corporate mission ... the [Federal, Food, Drug and Cosmetics] Act imposes not only a positive duty to seek out and remedy violations when they occur but also, *402 and primarily, a duty to implement measures that will insure that violations will not occur.
....
The concept of a "responsible relationship" to, or a "responsible share" in, a violation of the Act indeed imports some measure of blameworthiness; but it is equally clear that the Government establishes a prima facie case when it introduces evidence sufficient to warrant a finding by the trier of the facts that the defendant had, by reason of his position in the corporation, responsibility and authority either to prevent in the first instance, or promptly to correct, the violation complained of, and that he failed to do so.
....
[T]he main issue for determination [is] not respondent's position in the corporate hierarchy, but rather his accountability, because of the responsibility and authority of his position, for the conditions which gave rise to the charges against him.
In United States v. Brittain, 931 F.2d 1413, 1419 (10th Cir.1991), the court interpreted the term "responsible corporate officer," as used in the Federal Clean Water Act, 33 U.S.C.A. § 1251 to § 1387, to reflect the concept of corporate officer responsibility developed in Dotterweich and Park:
Section 1319(c)(3) does not define a "responsible corporate officer" and the legislative history is silent regarding Congress's intention in adding the term. The Supreme Court, however, first recognized the concept of "responsible corporate officer" in 1943. See United States v. Dotterweich, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943). The Dotterweich Court held that a corporation's misdemeanor offense under the Federal Food, Drug, and Cosmetic Act of 1938 (FDCA) was committed by all corporate officers "who do have ... a responsible share in the furtherance of the transaction which the statute outlaws ... though consciousness of wrongdoing be totally wanting." Id. at 284, 64 S.Ct. at 138. See also United States v. Park, 421 U.S. 658, 670-73, 95 S.Ct. 1903, 1910-12, 44 L.Ed.2d 489 (1975).... Under this interpretation, a "responsible corporate officer," to be held criminally liable, would not have to "willfully or negligently" cause a permit violation. Instead, the willfulness or negligence of the actor would be imputed to him by virtue of his position of responsibility.
Since the WPCA was designed to establish a state system for enforcement of the provisions of the Federal Clean Water Act, see Pub. Serv. Elec. & Gas Co. v. New Jersey Dept. of Envtl. Protection, 101 N.J. 95, 99-100, 501 A.2d 125 (1985); Lewis Goldshore, New Directions in Water Pollution Control, 100 N.J.L.J. 797, 806 (Sept. 8, 1977), it is reasonable to construe the term "responsible corporate official" as used in N.J.S.A. 58:10A-3(l) in conformity with the concept of "responsible corporate *403 officer" developed in Dotterweich and Park and applied in Brittain. Under this view, an individual may not be held liable for a corporation's violation of the WPCA simply because he or she occupies the position of corporate officer or director. Instead, there must be a showing that a corporate officer had actual responsibility for the condition resulting in the violation or was in a position to prevent the occurrence of the violation but failed to do so. Stated another way, we construe the WPCA to impose liability only upon corporate officers who are in control of the events that result in the violation. Absent such a showing, a corporate officer cannot be said to be "responsible" for the violation.
Consequently, the determination of whether Frank and Kresch were "responsible corporate officials" with respect to STCC's violations of the WPCA turns on whether they were actual participants in the operations of STCC that resulted in the violations or would have been in a position to prevent those violations. Furthermore, even if it can be shown that Frank and Kresch were "responsible corporate officials," the penalties that may be properly assessed against each of them depends, among other things, on "the economic benefits from the violation gained by the violator, the degree of cooperation or recalcitrance of the violator in remedying the violation, any measures taken by the violator to avoid a repetition of the violation ..., and any other pertinent factors ... [relating to the] conduct of the violator." N.J.S.A. 58:10A-10(d)(1)(b). This determination must be made separately for each individual violator. Thus, the DEP had the burden of presenting evidence of Frank's and Kresch's individual roles in STCC's operations both to establish the required foundation for the imposition of personal liability and to provide a basis for determining the amount of penalties to be assessed against each defendant.
To discharge this evidential burden, the DEP relied substantially upon evidence that had been presented before Frank and Kresch had even entered appearances in the action. For *404 example, the DEP relied in part on the prior testimony of John Domanski, STCC's chief boiler engineer and wastewater operator, that Kresch was his supervisor and that he had discussed STCC's permit violations with her on a regular basis. Domanski also testified in the prior proceedings that Kresch was aware of all of STCC's violations and had instructed him to discharge wastewater into the Kill Van Kull during June, July and August 1990 without waiting for certain test results. Notwithstanding the importance of this testimony in establishing Kresch's personal liability, the DEP did not recall Domanski to the stand after Kresch entered her appearance or offer any explanation for his absence from the proceedings. As a result, Kresch was not only unable to raise objections to Domanski's testimony but was also deprived of any opportunity to conduct cross-examination of this critical witness. In addition, the DEP read into the record substantial other testimony presented in April 1991, before Frank and Kresch had entered their appearances, to establish the violations by STCC for which they were ultimately held personally liable. Although STCC had the same interest as Frank and Kresch in defending against this evidence, these individual defendants very well could have adopted a different strategy in opposing the DEP's claims. In any event, since the DEP made no showing that any of its witnesses were "unavailable" when the trial resumed in May 1993, the admission of this testimony against Frank and Kresch violated Evidence Rule 63(3)(a)(ii). Therefore, we reverse the judgments entered against Frank and Kresch.[3]

III
In its cross-appeal, the DEP argues that the trial court erred in granting the motions to dismiss made by Standard *405 Marine, Peter Frank and Evelyn Frank.[4]
Rule 4:37-2(b) provides in pertinent part that a motion to dismiss at the close of the plaintiff's case "shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." The "judicial function" in passing upon such a motion is "quite a mechanical one." Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969). "The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Id. at 5-6, 258 A.2d 706.
The DEP's claims against Peter Frank and Evelyn Frank, like their claims against Susan Frank and Jane Kresch, were predicated on their alleged status as "responsible corporate officials" within the intent of N.J.S.A. 58:10A-3(l), that is, that they had actual responsibility for the condition resulting in the violation or were in a position to prevent the occurrence of the violations but failed to do so.
In granting these defendants' motions to dismiss, the trial court stated:
There is no evidence before the Court that Peter Frank was a day-to-day operator, even part-time, if it was not day-to-day, of the business of Standard Tank Cleaning Corporation.
The same with Evelyn Berman Frank. She may have been Chairman of the Board.... [B]ut she did not, according to the evidence received by this Court, control or conduct the day-to-day operation of the business.
Now the Court does find that the business was controlled and operated day-to-day by Susan Frank, who was the comptroller of the corporation and who signed *406 the DMR's, and by Jane Kresch. The DMR's were signed by Jane Kresch, but Susan Frank was the comptroller of [the] corporation. She did testify, through deposition, that decisions were made on a family basis.
The Court cannot accept the blanket statement to that effect. Perhaps, it was an idle statement to that effect, that the fact that decisions were made on a family basis means that Peter Frank and Evelyn Berman Frank were responsible corporate officials. This was just an isolated statement in her deposition.
We conclude that, viewing the evidence most favorably to the DEP, the trial court should have denied Peter and Evelyn Frank's motions to dismiss. The record includes STCC's Business Concern Disclosure Statement, which certified that Peter and Evelyn Frank were "key employees" of STCC, which at the time of defendants' alleged violations was defined as "any person employed by the applicant or the licensee in a supervisory capacity or empowered to make discretionary decisions with respect to the solid waste or hazardous waste operations of the business concern." N.J.S.A. 13:1E-127.[5] The record also indicates that Evelyn Frank owned 75% of Standard Marine's stock, which in turn owned 100% of STCC's stock, and that she was the chairman of STCC's board. Moreover, Peter Frank certified that "I have been involved with my family business all my life," and John Domanski, the licensed operator for the wastewater treatment plant, testified that he was supervised not only by Kresch but also by Peter Frank. The record also includes the following colloquy between the trial court and Kresch:
Q. In the years 1988-1989 and up to thus far in 1990, who made the business decisions in the company?
A. Well, it depends on what aspect. The financial, my sister does, environmental issues they rely on me, my brother does the  basically the business, but we all confer together and make a decision as a family.
Given the court's mechanical role in passing upon a motion to dismiss at the close of a plaintiff's case, the trial court should not have dismissed this testimony as simply "an idle statement." Therefore, the DEP presented sufficient evidence from which a trier of fact could find that even if Evelyn and Peter Frank were *407 not directly responsible for the violations of the WPCA, they were at least in a position to have prevented the continuation of those violations but failed to do so. Such a finding would be sufficient to support a conclusion that they were "responsible corporate officials."
The DEP's claim against Standard Marine was predicated upon the part of N.J.S.A. 58:10A-3(l) which defines "person" to include an "operator of a treatment works." The DEP argued that the evidence showed that Standard Marine and its subsidiary STCC were jointly engaged in the operation of STCC's treatment facility.
In granting Standard Marine's motion to dismiss, the trial court stated:
There were a few instances, in certain months, where the employees of Standard Tank Cleaning submitted the reports under the name of Standard Marine. The testing labs, after making these analyses, submitted its [sic] findings back to the corporation whose name was on the submission. In other words, Standard Marine.
The Court concludes that the submissions on some occasions, in the name of Standard Marine, were inadvertent and not intended to be indicative of the fact that Standard Marine was the operator of the treatment works.
We agree with the trial court that the DEP failed to present evidence that Standard Marine was jointly involved in the operation of STCC's treatment facility. Although the officers and directors of Standard Marine and STCC were the same persons, that by itself is insufficient to establish that Standard Marine operated the treatment facility.[6]
In addition, even extending all favorable inferences to the DEP, the two documents generated by third parties that suggested Standard Marine involvement in the operation of STCC's treatment facility were insufficient to support a finding that *408 Standard Marine entered into contracts relating to the operation of the facility. The third parties who generated these documents very well could have believed that they were dealing with Standard Marine even though their actual contractual relationships were with STCC. If the DEP thought those third parties had information that Standard Marine was in fact a joint operator of the facility, it should have deposed them or subpoenaed any contract documents that could have directly proven Standard Marine's involvement. In the absence of such evidence, there was no competent foundation for a finding that Standard Marine was a joint operator of the facility.

IV
We turn next to the DEP's argument that the trial court erred in failing to find that defendants had committed additional violations for which further penalties should have been imposed.
The DEP argues that the trial court erred by refusing to impose penalties for the days on which STCC violated the administrative order issued on September 16, 1988, and the court's order of June 19, 1990.
N.J.S.A. 58:10A-10(e) provides that any person who violates:
this act or an administrative order issued pursuant to subsection b. or a court order issued pursuant to subsection c., ... shall be subject upon order of a court to a civil penalty not to exceed $50,000.00 per day of such violation.
[Emphasis added.]
On September 16, 1988, the DEP issued an administrative order to STCC pursuant to N.J.S.A. 58:10A-10(b) which provided in part:
[STCC] shall not discharge any wastewater from the facility except in conformance with the final effluent limitations set forth in NJPDES Permit No. NJ0003085....
On June 19, 1990, the trial court entered an order which provided in pertinent part that:
[STCC] in accordance with the Administrative Order issued by DEP on September 16, 1988 shall not discharge any wastewater from its facility into the Kill Van Kull except in compliance with the conditions of its NJPDES Permit No. *409 NJ0003085 and in compliance with the New Jersey Water Pollution Control Act and the regulations promulgated thereunder.
At trial, the DEP submitted evidence demonstrating that STCC violated the September 16, 1988, administrative order on eighty-six separate days, and violated the June 19, 1990, court order on three days.
We agree with the DEP's contention that N.J.S.A. 58:10A-10(e) requires a trial court to impose separate penalties for violations of the WPCA, an administrative order and a court order, even though those violations are predicated on the same conduct. A violation of court or administrative order constitutes a more aggravated form of wrongdoing than a simple violation of a permit and also requires vindication of the authority of the court and agency that issued the order. However, in determining the appropriate penalty to impose in such circumstances, the trial court should take into consideration that the same conduct has resulted in multiple violations. Therefore, the part of the final judgment that fails to impose penalties for the violations of the September 16, 1988, administrative order and the June 19, 1990, court order is reversed, and the matter is remanded for the imposition of appropriate penalties for those violations.[7]
The DEP also argues that the trial court erred in failing to find twenty-three additional violations by STCC. Although the DEP acknowledges that it failed to present any testimony regarding these additional violations, it contends that they were sufficiently proven by documentary evidence. Specifically, the DEP relies upon a document prepared by the DEP staff, entitled "Table of NJPDES Permit Violations, May 1988 through August 1990," which apparently is a summary of reports submitted by STCC. *410 We are satisfied that the trial court did not err in concluding that this document was insufficient by itself to prove the violations in question.

V
Finally, the DEP argues that the trial court erred in denying its application for certain litigation expenses, including counsel fees.
N.J.S.A. 58:10A-10(c)(2) provides that if the DEP establishes a violation of the WPCA or a permit issued thereunder, the relief the court may award includes "[a]ssessment of the violator for the reasonable costs of any investigation, inspection, or monitoring survey which led to the establishment of the violation, and for the reasonable costs of preparing and litigating the case under this subsection."
We agree with the trial court's conclusion that N.J.S.A. 58:10A-10(c)(2) does not authorize an award of counsel fees to the DEP or the Attorney General's office. "Deeply imbedded in New Jersey jurisprudence is the principle that `legal expenses ... are not recoverable absent express authorization by statute, court rule, or contract.'" In re Thomas, 278 N.J. Super. 580, 584, 651 A.2d 1063 (App.Div.) (quoting State, Dept. of Envtl. Protection v. Ventron, supra, 94 N.J. at 504, 468 A.2d 150), certif. denied, 141 N.J. 95, 660 A.2d 1194 (1995). Consequently, where the Legislature has intended to authorize awards of counsel fees, it has expressly so provided rather than treating counsel fees as simply a component of the costs of litigation. See, e.g., Environmental Rights Act, N.J.S.A. 2A:35A-10(a) ("the court may in appropriate cases award to the prevailing party reasonable counsel and expert witness fees"); Consumer Fraud Act, N.J.S.A. 56:8-19 ("[a] court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit"); Residential Tenants Security Deposit Return Act, N.J.S.A. 46:8-21.1 ("the court ... shall award ... full costs of any action and, in the court's discretion, reasonable attorney's fees"); Law Against Discrimination, *411 N.J.S.A. 10:5-27.1 ("prevailing party may be awarded a reasonable attorney's fee as part of the cost ...").
The essential policy underlying statutory provisions that authorize counsel fee awards is to assure that private litigants "with bona fide claims are able to find lawyers to represent them." Coleman v. Fiore Bros., Inc., 113 N.J. 594, 598, 552 A.2d 141 (1989). This policy is particularly compelling where a private party is authorized to bring suit for the enforcement of legislation that serves a broad public interest. In fact, such a litigant is sometimes referred to as a "private Attorney General." See, e.g., Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 263, 95 S.Ct. 1612, 1624, 44 L.Ed.2d 141, 156 (1975). However, there is no comparable need for an award of counsel fees when an enforcement action is brought by the Attorney General or another public official. Hence, it is quite uncommon for a regulatory statute to authorize an award of counsel fees to a public prosecuting agency. Instead, it is ordinarily assumed that the costs of prosecution will be defrayed by the fines and penalties imposed upon violators. See Kimmelman v. Henkels & McCoy, Inc., 208 N.J. Super. 508, 516-17, 506 A.2d 381 (App.Div. 1986), rev'd on other grounds, 108 N.J. 123, 527 A.2d 1368 (1987). Consequently, we must assume that if the Legislature had intended to authorize awards of counsel fees to the Attorney General or the DEP, it would have expressly stated that the litigation costs awardable under N.J.S.A. 58:10A-10(c)(2) include counsel fees. In the absence of such an express statement, we construe the authorization for an assessment of the "reasonable costs of preparing and litigating the case" to refer solely to the fees of outside experts and other general litigation expenses.
We are also satisfied that the trial court did not abuse its discretion in denying the DEP's application for the reimbursement of $129,990.50 for the accountants' fees allegedly incurred in connection with this litigation. In refusing to make any award for these expenses, the trial court stated:

*412 The court believes that amount of accounting fees in this case is outrageously excessive. It is unbelievable to the court that an accounting firm could have expended that amount of hours in this type of case. Parenthetically, the court observes that in this type of case the liability issue is as close to a motion for summary judgment as anyone can get, because the reporting requirements under the NJPDES permit require the permittee to monitor the extent and parameters of the effluent discharge....
Beyond that, the accounting reports were never, never utilized, to the court's knowledge, by the State in the prosecution of the case. None of the reports were submitted in evidence as necessary, this was just something that counsel for the State thought was necessary.
There was a Discovery Master. Whether he was given 100 percent of the cooperation that he should have been given is debatable. But the expenses of the Discovery Master, his fees, were already paid by Standard Tank. Now it is sought to saddle Standard Tank with accounting fees which the court considers absolutely outrageous and unnecessary. There will be no award for accounting fees.
We affirm the trial court's denial of any award for accountants' fees because the DEP failed to show that there was any need to incur this expense. Although the presentation of an accountant's testimony at trial is not a prerequisite for an award of some or all of the accountant's fees, the record before us contains no evidence that the DEP had a need to retain an accountant in order to prepare this case for trial. The record also contains no evidence of the nature of the work performed by the accountants.[8]
Accordingly, we reverse the judgments entered against Susan Frank and Jane Kresch. We also reverse the dismissal of the DEP's complaint against Evelyn Frank and Peter Frank. The case is remanded for a new trial against these defendants. In addition, we reverse the judgment insofar as it fails to assess additional penalties against STCC for permit violations that also constituted violations of administrative and/or court orders and *413 remand for the imposition of additional penalties for those violations. The judgment on appeal is affirmed in all other respects.
NOTES
[1] Even after the entry of final judgment, a motion to reopen the judgment in order to assert an additional claim or add a new party would be governed by Rule 4:50 rather than the entire controversy doctrine. Cf. Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257-64, 531 A.2d 1078 (App.Div. 1987), certif. denied, 110 N.J. 196, 540 A.2d 189 (1988).
[2] Although Frank and Kresch have not presented any argument on appeal that directly relies upon the rules of evidence, they argue that their late joinder in the action prejudiced their defense and consequently denied them due process. We believe that this claim requires us to consider the evidence rules that governed the adjudication of their liability.
[3] If Frank and Kresch are again found liable in a trial conducted in conformity with this opinion, their individual liabilities for penalties should be separately determined under the criteria set forth in N.J.S.A. 58:10A-10(d)(1)(b). See State of N.J., Dept. of Envtl. Protection v. Lewis, 215 N.J. Super. 564, 574, 522 A.2d 485 (App.Div. 1987).
[4] Peter Frank's bankruptcy counsel sent a letter to the clerk of this court, dated June 13, 1995, which indicated that Peter Frank is a "debtor-in-possession" under chapter 11 of Bankruptcy Code, 11 U.S.C.A. §§ 1101 to 1174, and asserted that under 11 U.S.C.A. § 362, "any and all litigations against Mr. Frank are stayed." However, a petition under chapter 11 does not operate to stay the "continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C.A. § 362(b)(4). This exception to the automatic stay provisions of the Bankruptcy Code clearly applies to an enforcement action brought by the DEP under the WPCA. United States v. Nicolet, Inc., 857 F.2d 202, 206-09 (3d Cir.1988).
[5] In 1991, this provision was amended in respects not material to this appeal. L. 1991, c. 269, § 1.
[6] Compare State, Dept. of Envtl. Protection v. Ventron, 94 N.J. 473, 499-503, 468 A.2d 150 (1983), where the parent and subsidiary corporations not only had the same officers, directors and employees, but the parent also owned and controlled the property on which the subsidiary illegally dumped toxic wastes, and thus the Court concluded that the parent was "responsible" under the expansive strict liability provisions of the Spill Compensation and Control Act, N.J.S.A. 58:10-23.11g, for the subsidiary's discharge of hazardous substances.
[7] The record does not disclose whether the trial court, in determining the amount of penalties to impose upon STCC, considered that many of STCC's permit violations also constituted violations of administrative or court orders. If this circumstance was already taken into account in assessing the penalties for the permit violations, the court may assess purely nominal penalties for the violations of the administrative and court orders.
[8] The DEP's motion for litigation expenses was apparently supported by certifications and documentary evidence. However, none of this evidence has been included in any of the appendices submitted in connection with this appeal. Therefore, we must assume that the DEP has concluded that these materials would not support its argument regarding the denial of its application for reimbursement of accountants' fees.