748 A.2d 591 (2000)
329 N.J. Super. 476
Jeffrey MACYSYN, Petitioner-Respondent,
v.
Joseph HENSLER, Jr. and Lawrenceville Hardware, Respondents,
v.
Kathryn Hensler, Respondent-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 6, 2000.
Decided March 30, 2000.
*592 Arnold C. Lakind, Lawrenceville, for respondent-appellant (Szaferman, Lakind, Blumstein, Watter & Blader, attorneys; Mr. Lakind, on the brief).
Samuel M. Gaylord, Lawrenceville, for petitioner-respondent (Stark & Stark, attorneys; Mr. Gaylord, on the brief).
Before Judges HAVEY, KEEFE and COLLESTER.
*593 The opinion of the court was delivered by KEEFE, J.A.D.
Respondent Kathryn Hensler appeals from a final judgment of the Division of Workers' Compensation finding that she was personally liable for a judgment entered in favor of petitioner, Jeffrey R. Macysyn, stemming from a work-related injury that occurred on December 4, 1994. Kathryn's husband, Joseph E. Hensler, Jr., was also found personally liable, but has not appealed. The appeal requires that we decide two issues not heretofore addressed by an appellate court in this State: whether the Division of Workers' Compensation has jurisdiction to determine personal liability pursuant to N.J.S.A. 34:15-79 (hereafter § 79), and, if so, whether the evidence supports the Workers' Compensation judge's finding that Kathryn Hensler was "actively engaged" in the corporate business of Lawrenceville Hardware within the meaning of § 79. We hold that the Division does have jurisdiction over the subject matter of personal liability under § 79 of the statute, but the evidence does not support a finding that Kathryn Hensler was actively engaged in the corporate business so as to justify a finding of personal liability as to her.
Petitioner was employed by Lawrenceville Hardware, a corporation, when, in the course of his employment, he sustained an injury to his right eye. The injury ultimately rendered him blind in that eye. He filed a claim petition against Lawrenceville Hardware seeking compensation for his injury. It was soon discovered that his employer was uninsured. The claim petition was then amended to name Joseph E. Hensler, Jr., president of the corporation, and Kathryn Hensler, secretary, as respondents. The Uninsured Employer's Fund paid medical and temporary disability benefits. The Fund, however, does not pay permanent disability benefits. N.J.S.A. 34:15-120.2; see also Bashir v. Commissioner of Dep't of Ins., 313 N.J.Super. 1, 6, 712 A.2d 670 (App.Div.1998), aff'd, 158 N.J. 15, 726 A.2d 260 (1999).
The day before petitioner filed his amended claim petition naming the Henslers as respondents, the Henslers filed a petition in bankruptcy. Petitioner was listed as a creditor. Petitioner then filed an adversary complaint, seeking to have his workers' compensation claim against Joseph Hensler, Jr. non-dischargeable. Kathryn Hensler was not named in the complaint. Notwithstanding petitioner's opposition to Mr. Hensler's discharge, the bankruptcy court issued a "Discharge of Debtor" order in favor of both Henslers. The discharge order was filed before the final judgment was entered by the Workers' Compensation judge. We are informed that the bankruptcy court has before it the question of whether the judgment entered in the Division of Workers' Compensation violates its discharge order. In view of our ruling on this appeal, the decision in the bankruptcy matter will not moot our holding in this matter.
The focus of the dispute before us is on that part of the hearing conducted in the Workers' Compensation court concerning the question of whether Kathryn Hensler, the Secretary of Lawrenceville Hardware, was "actively engaged in the corporate business" in the context of § 79 and what court has the jurisdiction to decide the issue. The statute provides in relevant part:
An employer who fails to provide the protection prescribed in this article shall be guilty of a disorderly persons offense and shall be guilty of a crime of the fourth degree if such failure is willful. In cases where a workers' compensation award in the Division of Workers' Compensation of New Jersey against the defendant is not paid at the time of the sentence, the court may suspend sentence upon that defendant and place him on probation for any period with an order to pay the delinquent compensation award to the claimant through the probation office of the county. Where the employer is a corporation, the president, *594 secretary, and the treasurer thereof who are actively engaged in the corporate business shall be liable for failure to secure the protection prescribed by this article.

[N.J.S.A. 34:15-79].
The evidence before the Workers' Compensation judge concerning the operation of the corporation and Kathryn Hensler's involvement in it can be briefly summarized. Lawrenceville Hardware was founded in 1954 by Joseph Hensler Sr. In 1977 or 1978, Joseph Jr. was made president, and Kathryn Hensler was made secretary of the corporation several years later. Kathryn Hensler was a full-time teacher and also worked nights and weekends selling cosmetics. She received no salary from the corporation. Joseph Jr. testified that he and his father "basically ran the business together." He also said that, other than asking him why the corporation was borrowing money before she executed loan documents in her capacity as secretary or inquiring generally how the business was doing, his wife did not have any "duties within the operation of the store itself" and never made "management decisions." Further, his wife never made any decisions with respect to personnel or the maintenance of insurance. The corporation's insurance agent also testified that he never discussed anything other than personal auto insurance with Kathryn.
Based on the evidence before her, the Workers' Compensation judge made the following findings with respect to Kathryn Hensler's liability:
What we have here is a woman who was married to the president of the corporation, and who as secretary of the corporation had to sign all of the minutes of the corporate meetings as well as any business documents regarding Lawrenceville Hardware Inc. She was actively involved to the extent of questioning why certain debentures and notes were necessary and obviously had the power by refusal to prevent the president from taking a course of action, although admittedly she never took that step. For this person now to say that she was not actively involved in the business is spurious. She was aware of all the corporation's assets and liabilities or at least should have been as the secretary of the corporation, who is required by law to assure that appropriate corporate records are kept.
The purpose of Section 79 is to ensure that individuals cannot escape their responsibility for the provision of Workers' Compensation benefits to their employees merely by forming a corporation and hiding behind the corporate veil when they fail to acquire the appropriate insurance. It is obvious from the officers that are specifically referenced in Section 79, that the legislature anticipated that the only officers who would be "actively" involved in the corporate business would be the president, the secretary and the treasurer. These are all corporate officers who are required under the New Jersey Corporation Law, they all have specific duties and obligations to the corporation and the corporation cannot function properly without these individuals involving themselves with the corporate business. A secretary of the corporation is an essential partner in the operation of the business since the corporation cannot enter into any contracts, borrow any money, purchase any property, or purchase any inventory without the secretary's knowledge.

I.
Petitioner argues that we should not entertain the jurisdictional issue because respondent did not raise it in the trial court. We disagree. The issue of subject matter jurisdiction may be raised at any time. See, e.g., Connolly v. Port Auth. of N.Y. & N.J., 317 N.J.Super. 315, 318, 722 A.2d 110 (App.Div.1998). Alternatively, petitioner contends that the Legislature did not intend to permit the Division of Workers' Compensation to impose *595 civil liability on the officers identified in § 79, but rather the task should be left to "the Courts" following conviction in a criminal trial.
Subject matter jurisdiction of the Division of Workers' Compensation is limited in scope. N.J.S.A. 34:15-49 vests in the Division "the exclusive original jurisdiction of all claims for workers' compensation benefits under this chapter." Our Supreme Court has stated that the Division also has such jurisdiction "as is by fair implication incident to the authority expressly granted. Any reasonable doubt of the existence of a particular power in the Division is to be resolved against such power." Conway v. Mister Softee, Inc., 51 N.J. 254, 258, 239 A.2d 241 (1968) (citations omitted). We believe that a reasonable and unstrained interpretation of § 79 fairly implicates jurisdiction in the Division to determine civil liability of corporate officers in appropriate cases in order to carry out its statutory mandate under N.J.S.A. 34:15-49.
Assuredly, the first sentence of § 79 contemplates quasi-criminal or criminal responsibility for an "employer" who is uninsured, and the second sentence provides that payment of the compensation award may be made a condition of probation as a result of such a conviction.[1] Petitioner's argument, however, overlooks the fact that the second sentence of the statute contemplates that an award in the Division of Workers' Compensation must be entered first and remain unpaid when the sentence is imposed in the criminal prosecution. The third sentence of § 79, and the focal sentence in this appeal, provides that certain corporate officers may be "liable" where the employer is a corporation and has failed to obtain insurance as required by the Workers' Compensation Act. Respondent's argument suggests that liability imposed by that provision relates to the criminal proceeding referred to in the first sentence. Liability, of course, is a concept used in connection with both civil and criminal responsibility. Black's Law Dictionary, 915 (6th ed.1990) (defining "liability" as encompassing "every kind of legal obligation, responsibility or duty."). Therefore, in the context of that sentence in § 79, the word "liable" can be equally applicable to proceedings before the Division of Workers' Compensation in fixing the amount of the award, and to the proceedings in a court with criminal jurisdiction. There is no indication that the Legislature intended to confine § 79 to criminal proceedings. Indeed, we have suggested that the Law Division has jurisdiction to decided corporate-officer liability in the context of a civil case by a health provider against an injured worker where the medical provider has not been paid. West Jersey Health Sys. v. Croneberger, 275 N.J.Super. 303, 310, 645 A.2d 1282 (App.Div.1994).
Further, where the Legislature intended to restrict a non-employer's liability only to payment of an injured worker's compensation award it used more limiting language within the same section of the statute. After making certain corporate officers "liable", the very next sentence in § 79 holds contractors "liable" only for the "compensation" awarded to employees of subcontractors who have failed to obtain workers' compensation insurance. Lastly, the third paragraph of the statute addresses the power of the Director of the Division of Workers' Compensation to collect assessments against employers who fail to obtain insurance, in addition to other "penalties, fines or assessments provided for in chapter 15 of Title 34 of the Revised Statutes." In sum, § 79 was intended to address four different but related problems of employers who fail to obtain workers' *596 compensation insurance: the criminal liability of an employer; the criminal and civil liability of certain corporate officers; the civil liability of a general contractor for a subcontractor who fails to insure; and the imposition of assessments against employers who fail to insure.
Aside from the grammatical structure of § 79, there is a compelling practical reason to permit a judge of compensation to determine whether a corporate officer is civilly liable for the petitioner's award. As noted earlier in this opinion, the Fund provides benefits to the injured worker only for medical and temporary disability benefits, and it does so only after the employer "fails to make payment of compensation according to the terms of any award within 45 days" of the award. N.J.S.A. 34:15-120.1. It does not provide payment for any permanent disability award. Bashir v. Commissioner of Dep't of Ins., supra, 313 N.J.Super. at 6, 712 A.2d 670. While N.J.S.A. 34:15-120.9 permits the injured worker to sue the "employer" for benefits that the employee did not receive from the Fund, that remedy is of little benefit where the employer is an insolvent corporation. In such cases, under the respondent's interpretation of § 79, an injured employee, such as the petitioner in this case, could obtain the full benefit of the compensation award only if he could convince some prosecutor to initiate criminal proceedings against a corporate officer. It is unlikely, in our view, that the Legislature intended to create such hurdles to an injured worker. Further, the statutory interpretation urged by respondent would be antithetical to the long-standing judicial policy in this State to construe the Workers' Compensation Act liberally to achieve the beneficent results of this social legislation. See e.g., Bunk v. Port Auth. of N.Y. & N.J., 144 N.J. 176, 191-92, 676 A.2d 118 (1996); Panzino v. Continental Can Co., 71 N.J. 298, 364 A.2d 1043 (1976). Lastly, our interpretation has a salutary benefit to the employer. A determination of civil liability in a workers' compensation proceeding gives the corporate officer or officers found liable an opportunity to pay the award and perhaps avoid the possibility of being criminally prosecuted.

II.
Respondent contends that the workers' compensation judge erred in finding that, as corporate secretary, she was "actively engaged" in the corporate business within the meaning of § 79. She claims that the judge premised that finding on the false assumption that one who is a corporate secretary is ipso facto "actively engaged in the corporate business."
It is clear from the judge's decision that the finding was not based upon credibility. Indeed, the facts are not in dispute concerning respondent's involvement in the business. The question is really one of law. The trial judge recognized as much. She acknowledged that the case came "down to what the legislature meant by actively involved in the corporate business." In those circumstances, an appellate court owes no particular deference to the trial judge's finding. DiBlasi v. Board of Trustees, 315 N.J.Super. 298, 301-02, 718 A.2d 241 (App.Div.1998); Verge v. County of Morris, 272 N.J.Super. 118, 123, 639 A.2d 378 (App.Div.1994).
Research has failed to disclose any case law interpreting the statutory language in question. In matters of statutory construction, a court must first look to the language of the statute itself. Kimmelman v. Henkels & McCoy Inc., 108 N.J. 123, 128, 527 A.2d 1368 (1987). Each word in the statute must be given its plain meaning; no word should be rendered inoperative or superfluous. Dempsey v. Mastropasqua, 242 N.J.Super. 234, 238, 576 A.2d 335 (App.Div.1990). Where the statutory language "is precise and unambiguous there is no room for judicial interpretation or for resort to extrinsic materials. The language speaks for itself." Vreeland v. Byrne, 72 N.J. 292, 302, *597 370 A.2d 825, (1977). See also 2A Sutherland Statutory Construction, § 46.01 (5th Ed.1992).
In determining the common meaning of words, it is appropriate to look to dictionary definitions. Matthews v. State, 187 N.J.Super. 1, 7-8, 453 A.2d 543 (App.Div. 1982), appeal dismissed, 93 N.J. 298, 460 A.2d 694 (1983); 2A Norman J. Singer, Statutes and Statutory Construction § 47:27 (6th Ed.2000). The American Heritage Dictionary (2nd Ed.1985) defines the word "active" as "engaged in activity; participating. Expressing action rather than a state of being." Id. at 77. It also defines the word "engaged" as "employed, occupied or busy." Id. at 454. The word "engage" also "connotes more than a single act or single transaction; it involves some continuity of action." Head v. New York Life Ins. Co., 43 F.2d 517, 520 (10th Cir.1930). These definitions connote a continuous involvement in the corporate business.
Two New Jersey statutes have used the term in contexts connoting full-time involvement in the subject occupation. N.J.S.A. 45:8-63 (members of the Home Inspection Advisory Committee must have been actively engaged in the practice of home inspection in New Jersey for at least five years prior to their appointment); N.J.S.A. 45:3B-11 (an individual may become licensed as a speech therapist without an examination provided the individual was actively engaged in the practice of speech-language pathology prior to January 1, 1970).
There is scant legislative history, but the history that exists supports respondent's interpretation. A 1935 "Report of the Joint Commission on Study of Workmen's Compensation Act and Practices" recommended that the directors of a corporation which failed to maintain workers' compensation insurance be made liable regardless of their level of involvement. However, the Legislature rejected that language and passed L. 1938, c. 130, thereby amending N.J.S.A. 34:15-79 to impose liability only on certain corporate officers who were "actively engaged" in the corporate business.
Clearly, however, respondent did everything that was required of her as a corporate secretary. She signed corporate loan documents, corporate minutes, and any other writing that required the signature and seal of the corporate secretary. In that respect, she was actively engaged in the limited role of a corporate secretary. See 2A Fletcher Cyc Corp. § 636 (a corporate secretary is the "custodian of the corporate seal"). But § 79 does not require the secretary of the corporation to be actively engaged as the secretary but, rather, to be actively engaged in the "corporate business." The corporate business of the employer in this case was that of a hardware store. In that context, respondent clearly did not actively engage in the management of the corporation's business. She received no salary and made no business decisions affecting the operation of the hardware store in any way. Her involvement was circumscribed to the bare-bone function of a corporate secretary, i.e., the keeper of the corporate seal.
Ordinarily, officers of corporations are insulated from personal liability for the conduct of the corporation. Cases that pierce the corporate veil creating exceptions to the general rule are generally aimed at corporate officers who, in fact, have a practical and realistic opportunity to avoid injurious consequences of corporate conduct in areas of public health and safety. For example, in the context of the Comprehensive Environmental Liability and Response Act, CERCLA,[2] personal liability pursuant to 42 U.S.C.A. § 9607(a)(2) is limited to those owners and operators whose acts have demonstrated a "high degree of personal involvement in the operation and the decision-making process" of the corporation. United States v. Conservation Chem. Co., 628 F.Supp. 391, *598 420 (W.D.Mo.1985). Similarly, New Jersey's Water Pollution Control Act,[3] imposes liability on a "responsible corporate official" for certain corporate violations of the Act. N.J.S.A. 58:10A-3(l). In construing that language, this court has held that "there must be a showing that a corporate officer had actual responsibility for the condition resulting in the violation or was in a position to prevent the occurrence of the violation but failed to do so....[The officer must have been] in control of the events that result in the violation." State v. Standard Tank, 284 N.J.Super. 381, 403, 665 A.2d 753 (App.Div.1995). The Workers' Compensation Act should be construed similarly, especially where the wording of the statute so permits, so as to maintain the benefits of the corporate form.
The judgment under review is affirmed in part and reversed in part. That part of the judgment imposing personal liability against Kathryn Hensler pursuant to § 79 of the Workers' Compensation Act is reversed. The matter is remanded to enter an amended judgment to that effect.
NOTES
[1] A disorderly persons offense is considered to be quasi-criminal in nature, while a fourth degree offense is considered a crime. N.J.S.A. 2C:1-4. For the purpose of discussion in this opinion, the concepts will be considered indistinguishable and referred to as "criminal" responsibility.
[2] 42 U.S.C.A. §§ 9601-9675.
[3] N.J.S.A. 58:10A-1 to -60.