712 A.2d 1129

SYLVIA KIMMEL, EXECUTRIX OF THE ESTATE OF ELIAS M. KIMMEL, O.D., F.A.A.O., DECEASED, PLAINTIFF–RESPONDENT, v. PEDRO DAYRIT, M.D., DEFENDANT–APPELLANT, AND JOHN DOE MD # 1 (RADIOLOGIST), JOHN DOE # 2 (SURGEON), JOHN DOE # 3 (INTERNIST), JOHN DOE # 4 (NEUROLOGIST), JOHN DOE # 5 (RADIOLOGIST), JOHN DOE # 6 (PATHOLOGIST), JOHN DOE # 1 (INDIVIDUAL PARTNERSHIP OR ENTITY IN CHARGE OF LABORATORY), JOINTLY, SEVERAL AND/OR IN THE ALTERNATIVE, DEFENDANTS.

Argued April 28, 1998—Decided July 13, 1998.

*Christopher J. Christie* argued the cause for appellant (*Dughi and Hewit*, attorneys; *Mr. Christie* and *Gary L. Riveles* of counsel and on the briefs).

*Daniel A. Zehner* argued the cause for respondent.

PER CURIAM.

This appeal involves a medical malpractice action brought by plaintiff, Sylvia Kimmel, who asserts wrongful death and survivorship claims based on her husband's death from colon cancer. She contends that he died after the defendant, Dr. Pedro Dayrit, failed to perform or obtain the results of tests to monitor her husband's condition. She argues that this negligent failure prevented her husband from discovering that his colon cancer had metastasized to his liver. Plaintiff claims as damages the impairment of the decedent's quality of life and the lost opportunity to arrange his personal and financial affairs. At trial, the jury returned a verdict of no negligence in favor of defendant. Thereafter, plaintiff filed a

motion for a new trial, but this motion was denied. On appeal, the Appellate Division vacated the jury's verdict and reversed the order denying plaintiff's motion for a new trial, holding that a finding of no negligence was against the weight of the evidence and resulted in a miscarriage of justice. 301 *N.J.Super.* 334, 693 *A.*2d 1287 (1997). The Appellate Division also considered the doctrine of informed consent and concluded that the plaintiff should be allowed to pursue a claim based on the this theory at retrial. *Id.* at 353, 693 *A.*2d 1287. This Court granted defendant's petition for certification, which sought review of both issues. 151 *N.J.* 465, 700 *A.*2d 878 (1997).

I

The salient facts in this case are recounted in the opinion of Judge Wecker and we need not recapitulate them in detail. *See* 301 *N.J.Super.* at 337–41, 693 *A.*2d 1287. Brief reference to those facts is necessary, however, to explain the principle reason for our disposition of the first issue in this case, namely, the Appellate Division's holding that the jury's verdict of no-negligence constituted a miscarriage of justice warranting a new trial.

As the appellate court's opinion indicates, testimony at trial centered around three alleged negligent omissions: 1) defendant's failure to obtain the results of the January 1984 carcinoembryonic antigen (CEA) test, 2) defendant's failure to perform serial CEA testing, and 3) defendant's failure to obtain in a timely manner the results of the April 1989 CEA test. *Id.* at 341, 693 *A.*2d 1287. The defense introduced evidence that post-operative CEA testing has no therapeutic value; that once cancer has spread to the liver from the colon treatment is futile; that a patient who chooses to undergo liver resection or infusive chemotherapy will neither prolong nor improve the quality of his life; and that CEA tests are inherently unreliable. *Id.* at 345–48, 693 *A.*2d 1287. Therefore, the defense maintained at trial, the standard of care does not require a doctor to order serial tests when the tests are unreliable

and serve no therapeutic purpose, and the patient's chance of having the detectable disease are remote. *Ibid.*

The case was submitted to the jury. The first question on the verdict sheet asked: Did defendant Dr. Pedro Dayrit deviate from accepted standards of medical practice in his care and treatment of the late Elias M. Kimmel, O.D.? The jury answered this question in the negative and was directed to proceed no further. *Id.* at 342, 693 *A.*2d 1287. Accordingly, judgment was entered in favor of Dayrit.

As noted, the Appellate Division reversed, holding that the jury verdict was against the weight of the evidence and created a miscarriage of justice warranting a new trial. *Id.* at 353, 693 *A.*2d 1287. Judge Wecker, expressing the view of the entire court, explained the standard of judicial review. *Id.* at 338, 693 *A.*2d 1287 (citing *Carrino v. Novotny,* 78 *N.J.* 355, 360–61, 396 *A.*2d 561 (1979); *Baxter v. Fairmont Food Co.,* 74 *N.J.* 588, 597–99, 379 *A.*2d 225 (1977); *R.* 2:10–1). Applying that standard, the court determined that there was an "inconsistency between the verdict of no negligence and defendant's undisputed failure on two occasions to obtain the results of the CEA tests that he ordered, first in January 1984 and again in April 1989" and that "[d]efendant as well as his expert witnesses admitted his mistake with respect to the April 1989 test." *Ibid.* The court concluded that Dr. Dayrit "was required by the applicable standard of care either to obtain the [January 1984] results, or to repeat the test, within seven days of the polypectomy"; that it was "logically inconsistent for the defense experts each to agree that the seven-day CEA test was part of the required standard of care under the circumstances presented, but that follow-up testing would serve no useful purpose and was therefore not required by the standard of care"; and that the failure to obtain the April 1989 CEA test results in a timely manner was a deviation from the standard of care. *Id.* at 343, 344, 349, 693 *A.*2d 1287.

■ Defendant's petition for certification included the claim that the Appellate Division should not have reversed the jury

finding of no negligence. We conclude that this issue raises primarily issues of fact and requires the application of settled law to those facts. Further review by this Court would entail essentially only additional consideration of the facts as such. It does not appear that disposition of this issue on the merits will require the reexamination of settled principles of law or the clarification, modification, or extension of those principles of law or the formulation of new principles of law. The issue does not present a question of public importance that has not been but should be addressed by this Court. Moreover, although we do not minimize the inconvenience and expense entailed in a retrial, it does not appear that the Appellate Division's reversal of the jury verdict of no negligence on grounds of manifest injustice itself constitutes a grave injustice or irremediable prejudice to defendants. We thus find that this issue does not warrant certification and further review by this Court. *See In re Contract for Route 280,* 89 *N.J.* 1–2, 444 *A.*2d 51 (1982); *Mahony v. Danis,* 95 *N.J.* 50, 50–53, 469 *A.*2d 31 (1983) (Handler, J., concurring). Accordingly, we vacate certification on this issue as improvidently granted. *See R.* 2:12–4.

### III

As noted, the Appellate Division held that on remand plaintiffs were entitled to seek to establish liability on the basis of the doctrine of informed consent.

Observing that "[w]ith differing opinions among experts," the court "would not normally interfere with a jury's choice of the appropriate standard of care," Judge Wecker added that in this case the court would depart from this rule because "defendant's experts offered a value judgment, not a medical judgment, by testifying that a patient has no need to know that he has a terminal condition." 301 *N.J.Super.* at 349, 693 *A.*2d 1287. The court concluded that defendant "opened the door to the real issues regarding regular CEA testing following surgery: the patient's right to be informed about the availability, the benefits, and the limitations of repeat CEA testing." *Id.* at 350.

In explaining the doctrine of informed consent and its relevance in this case, the court espoused an expansive standard for informed consent.[1]

The court below recognized that the issue of informed consent had not been raised or presented at the trial level. *Id.* at 352–53. Further, as Judge Humphreys pointed out in his concurring opinion, the issue was not raised by either party on appeal. *Id.* at 361 (Humphreys, J., concurring). Nevertheless, the court concluded that "justice requires that plaintiff have the opportunity to present the failure-to-inform argument on retrial." *Id.* at 353.

We express strong reservations about the court's decision to recognize and consider this issue on appeal in the absence of any pleadings, any claims or defenses, any arguments made by the parties, or any rulings by the trial court, and without any relevant evidence having been introduced addressing this issue. As Judge Humphreys noted: "Before such a far reaching judicial decision is made, the parties should be given an opportunity to brief and argue the matter." *Id.* at 361.

■ The issue of the relevance and applicability of the doctrine of informed consent as a basis for liability in this case should not be resolved on appeal. Judge Stern, in his concurring opinion, expressed these concerns, *viz:*

---

[1] Judge Wecker indicated that informed consent implicates "the patient's 'right of self-determination,' as well as the value the patient may have placed on knowledge—specifically for financial planning ... or for personal planning. There may well be a dollar value that a reasonable jury would award ... for decedent's lost opportunity to determine for himself how to spend his remaining time on this earth." *Id.* at 351, 693 A.2d 1287 (internal citation omitted). Judge Humphreys was "uncertain" whether the doctrine of informed consent does or should reach so far as to require a "monitoring physician" to "obtain the patient's consent *not* to use the test" and, further, whether the doctrine, as enunciated by the majority, would allow liability to be imposed without the plaintiff having presented any expert testimony that the doctor's failure to inform the patient of the availability of this test was a deviation from the proper standard of medical care. *Id.* at 360–61 (Humphreys, J., concurring).

While I join in Judge Wecker's opinion in permitting the 'failure to inform' theory to be presented as part of plaintiff's case, the opinion does not require the trial judge to present it to the jury. The theory can be explored as any other issue in the adversary context at trial.

[*Id.* at 359 (Stern, J., concurring).]

Judge Humphreys also felt that "this new theory of liability . . . should be subject to appropriate motions at the trial level." *Id.* at 362 (Humphreys, J., concurring).

Without passing on the merits of the issue of informed consent, we direct the trial court, on motion made at remand, to decide initially and in its sound discretion whether it is proper for the plaintiff to be permitted to develop at retrial a claim based on informed consent. In reaching that determination, the trial court can take both substantive and procedural considerations into account. For example, the court may consider whether or not the newly asserted claim "would unduly prejudice any party to the action," *Molnar v. Hedden,* 138 *N.J.* 96, 102, 649 *A.*2d 71 (1994), would survive a motion to dismiss on the merits, *Interchange State Bank v. Rinaldi,* 303 *N.J.Super.* 239, 257, 696 *A.*2d 744 (App.Div. 1997), would cause undue delay of the trial, *State v. Standard Tank Cleaning Corp.,* 284 *N.J.Super.* 381, 396, 665 *A.*2d 753 (App.Div.1995), would be a mere effort to avoid the strictures of another, applicable rule of law, *see Bonczek v. Carter–Wallace, Inc.,* 304 *N.J.Super.* 593, 602, 701 *A.*2d 742 (App.Div.1997), *certif. denied,* 153 *N.J.* 51, 707 *A.*2d 154 (1998), or could be "addressed under ordinary medical negligence standards," *see Vandi v. Permanente Medical Group, Inc.,* 7 *Cal.App.*4th 1064, 9 *Cal.Rptr.*2d 463, 467 (1992) (rejecting modified informed consent theory on these grounds).

As modified, the judgment of the Appellate Division is affirmed.

*For Modification and Affirmance*—Chief Justice PORITZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.