809 A.2d 818 (2002)
355 N.J. Super. 132
STATE of New Jersey, Plaintiff-Respondent,
v.
Robert TODD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 10, 2002.
Decided November 18, 2002.
*820 Peter A. Garcia, Acting Public Defender, attorney for appellant (Bernadette DeCastro, Assistant Deputy Public Defender, of counsel and on the brief).
John L. Molinelli, Bergen County Prosecutor, attorney for respondent (Dion Findley, Assistant Prosecutor, of counsel and on the brief).
Appellant filed a pro se supplemental brief.
Before Judges COBURN, COLLESTER and ALLEY.
*819 The opinion of the court was delivered by ALLEY, J.A.D.
Defendant appeals from his conviction for three incidents of third degree burglary of a motor vehicle, N.J.S.A. 2C:18-2, on May 13, 1998, in the Borough of Fairview (Counts One through Three) and for third degree theft of movable property in excess of $500, N.J.S.A. 2C:20-3(a) (Count Four). The sentencing judge imposed an extended term sentence of eight years imprisonment with a three-year period of parole ineligibility, and defendant also appeals from his extended term sentence. The appeal further brings up for our review defendant's appeal from the denial of his motion to suppress, and we address that aspect of the appeal first.
The evidence as developed at the motion to suppress showed that a report was made to the Fairview police department on May 13, 1998, shortly before 3:30 a.m., to the effect that commuter vans in a particular location in the municipality had been burglarized. The report also indicated that an individual in light-colored clothing had been seen leaving the area of the burglary. Three officers arrived in the area. They ascertained that the windows on three of the vans had been broken. One of the officers was sent to check outside the immediate area. In doing so, he observed defendant walking south on Bergen Boulevard. Defendant had a fanny pack around his neck and was perspiring and nervous. The officer drove up to defendant and asked him where he was coming from and where he was going. Defendant *821 stated he was headed for a nearby tavern, but this struck the officer as strange because it was already 3:30 a.m., and he was aware that bars in the area closed at 3:00 a.m. After the officer looked at his watch, defendant stated that he was meeting someone in the tavern's parking lot.
The officer informed defendant of the burglary investigation and asked defendant to accompany him to the scene so that a witness could look at him. Defendant agreed. The officer decided to take defendant to the location in the police car, and before seating him in the police car he told defendant that he wanted to search the fanny pack for his and defendant's protection. Defendant replied, "Go right ahead." When the officer opened the bag he saw a coin changer, quarters, flashlight, and tape. The officer and defendant went via police car to the parking lot where the burglary allegedly had occurred. There, a woman was unable to positively identify defendant by his face, although she noted similarities between his build and that of the perpetrator.[1]
The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. Amends. IV and XIV. The New Jersey Constitution in almost identical language also protects individuals against such intrusion. N.J. Const. art. 1, ¶ 7. These constitutional strictures apply to all seizures of the individual, even if the seizure involves only a brief detention. Under both the federal and state provisions, a warrantless search is per se unreasonable "unless it falls within one of the few specific and well-delineated exceptions" to the warrant requirement. State v. Demeter, 124 N.J. 374, 379-80, 590 A.2d 1179 (1991).
One of the exceptions to the warrant requirement is an investigatory stop pursuant to Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and its progeny. Under Terry, if an officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion[,]" the officer is justified in making an investigatory stop. Id. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906; Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 617 (1972); United States v. Brignoni-Ponce, 422 U.S. 873, 880, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607, 616, (1975).
The reasonable suspicion that is necessary to justify an investigatory stop is "something less than the probable cause standard needed to support an arrest." State v. Thomas, 110 N.J. 673, 678, 542 A.2d 912 (1988). There must be "some objective manifestation that the suspect was or is involved in criminal activity." Ibid. When examining the facts contributing to an officer's suspicion of criminal activity, weight is given to "the officer's knowledge and experience" in addition to the "rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise." State v. Arthur, 149 N.J. 1, 10-11, 691 A.2d 808 (1997). Merely because innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions if "a reasonable person would find the actions *822 are consistent with guilt." Id. at 11, 691 A.2d 808.
We are satisfied that, at the time of the stop in this case, the officer had an articulable and reasonable suspicion that defendant was engaged in criminal activity. For example, prior to stopping defendant, the officer knew from the dispatch call that a man of average height and weight had been seen running from the crime scene toward Bergen Boulevard; a few minutes had passed since the burglary occurred, indicating that the perpetrator might well be nearby; and the suspect in question was wearing light-colored clothing. Moreover, from their observations of the broken windows of three of the vans at the crime scene, the police were aware that a crime probably had been committed. Additionally, when he first confronted defendant, the officer had observed him walking south on Bergen Boulevard within a few blocks of the crime scene. Defendant was the only person then walking on that street, at approximately 3:30 a.m. Defendant was sweating and appeared nervous, and had a fanny pack around his neck.
Even though defendant's presence so near the crime scene at such an early morning hour might have had a potentially innocent explanation, his appearance and mannerisms could reasonably have led to the conclusion that he had just taken part in the crime that had occurred only a short distance away. We conclude, in all the circumstances, that the trial court correctly determined that the officer had the necessary level of suspicion to conduct a Terry stop of defendant.
Our analysis as to the search of the fanny pack is as follows. Although the judge who determined the motion to suppress found that defendant had consented to that search, the assent defendant provided was not legally effective, and the search cannot be justified on grounds of consent. It is firmly established that under the federal constitution a consent to search need only be voluntary, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), whereas under our state constitution, as our Supreme Court has made clear, "where the State seeks to justify a search on the basis of consent it has the burden of showing that the consent was voluntary, an essential element of which is knowledge of the right to refuse consent." State v. Johnson, 68 N.J. 349, 353-54, 346 A.2d 66 (1975).
The evidence in this case was that the officer who encountered defendant asked him if he could check the fanny pack for the officer's own protection "and for himself," and defendant said, "Go right ahead." The record thus arguably establishes that voluntary consent was obtained. A missing element to its legal effectiveness, however, is the knowing nature of the consent, there being no evidence that defendant had been informed that he had the right to withhold consent. In these circumstances, the search of the fanny pack and seizure of its contents cannot be justified on consent grounds.
We next consider whether the search is sustainable, in the context of a valid Terry stop, as having been necessary to prevent immediate harm. We are satisfied that it is not so sustainable, because there was lacking here a requisite element: that the officer had a reasonable basis for concluding that defendant was armed. See, State v. Casimono, 250 N.J.Super. 173, 178-80, 593 A.2d 827 (App.Div.1991), certif. denied, 127 N.J. 558, 606 A.2d 370 (1992). In State v. Roach, 172 N.J. 19, 27, 796 A.2d 214 (2002), the Court stated:
The protective search exception to the warrant requirement was created to protect an officer's safety where there is *823 reason to believe that a suspect is armed and dangerous. Id. at 26-27, 88 S.Ct. 1868, 1882-83, 20 L.Ed.2d 889, 909. The exception allows a law enforcement officer "to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." Id. at 23, 88 S.Ct. at 1881. Specifically, the officer may conduct "a carefully limited search of the outer clothing ... in an attempt to discover weapons which might be used to assault him." Id. at 30, 88 S.Ct. at 1885. The search must, however, be "confined in scope to an intrusion reasonably designed to discover" weapons that might be used to assault the police officer. Id. at 29, 88 S.Ct. at 1884. Therefore, in order to conduct a protective search, an officer must have a "specific and particularized basis for an objectively reasonable suspicion that defendant was armed and dangerous." State v. Thomas, 110 N.J. 673, 683, 542 A.2d 912 (1988).
In Roach, defendant's person was searched after he had been stopped for motor vehicle violations. The Court sustained the search because of the reasonable fear the officers held for their safety. Among the factors supporting the search were that the defendant failed to produce a driver's license, was nervous, was intoxicated, attempted to leave, reached for a noticeable bulge in the area of his waist, refused to obey an order of one of the officers, and had to be restrained. The Court stated that not
every time an officer pats down a defendant and cannot ascertain what he is feeling, ... [is he] free to seize the item. As all parties acknowledge, the officer must have a reasonable suspicion that defendant is armed and dangerous.... Simply stated, the facts surrounding the event are pivotal.
[Id. at 29, 796 A.2d 214.]
Here, the officer at the scene did not engage in the search out of idle curiosity. Rather, he plainly was engaged in precautionary and protective activity when he searched the fanny pack. The question is whether it passed constitutional muster, and we conclude that it did not. The officer did not even attempt to justify the search by contending that he believed the fanny pack contained dangerous weapons, nor would he have had reasonable grounds for so concluding in the circumstances. Defendant responded to his questions in a non-threatening manner. Even though defendant was stopped in the early hours of the morning, when speaking to the officer after he had been stopped he made no suspicious moves and gave no other signs that would indicate that he presented in any way an immediate threat, let alone that he was armed. Moreover, his willingness to allow the bag to be examined certainly furnished no support for a reasonable belief that it contained deadly weapons. And his statement that he was en route to a local tavern was, in view of the officer's knowledge of the closing hours of local taverns, perhaps suspicion-raising as to his possible lack of innocence, but it was not threatening.[2]
We are also unable to conclude that there is any other basis for holding that the search and seizure were in conformity with constitutional requirements. We reach this conclusion notwithstanding our view that, on the basis of the evidence *824 relied on by the judge who decided the motion to suppress, probable cause to arrest existed at the time of the search.[3]
To us, it is pivotal that defendant was not arrested when he was placed in the police car to be driven to the "show-up" confrontation with the eyewitness. Indeed, although at some point after defendant's arrival at the police station he was placed in a holding cell, he was not formally placed under arrest until several hours later at the police station, after the owner of the commuter vans arrived and identified the contents of the fanny pack as belonging to him.
In our view, the failure to effect an arrest or even to attempt a valid arrest precludes classifying the search as being incident to an arrest, even though probable cause to arrest existed. Although made in a somewhat different context, because probable cause to arrest there did not exist, we find persuasive the following observations by the Court in State v. Sims, 75 N.J. 337, 352-53, 382 A.2d 638 (1978):
to have a search incident to a lawful arrest it is first necessary to have a valid arrest. Here, the defendants were first subjected to a search which yielded contraband and only then placed under arrest.
* * *
More specifically, in order for a search to be justified as incidental to a valid arrest, there must have been an intention on the part of the officers to arrest on the information possessed by them prior to the search, without regard to what the search might disclose.
We hold that because an arrest had not been effected, the warrant requirement's exception for a search incident to a lawful arrest has no application here. We recognize that this holding might be considered unfortunate to the degree that it could be seen as penalizing the authorities for not effecting an earlier arrest. There is something to be said for not encouraging officers to be precipitate in employing their arrest powers. But the result in this case is what the law compels, and it is not properly our function to subordinate a defendant's constitutional rights to considerations of policy or convenience.
We also consider, respecting the issue of the search's validity, the State's contention that it falls within the inevitable discovery exception to the warrant requirement. The inevitable discovery doctrine may be invoked to admit evidence that was the product of an illegal search when the evidence "would inevitably have been discovered without reference to the police error or misconduct, [because] there is no nexus sufficient to provide a taint[.]" Nix v. Williams, 467 U.S. 431, 448, 104 S.Ct. 2501, 2511, 81 L.Ed.2d 377, 390 (1984); accord State v. Sugar (III), 108 N.J. 151, 156, 527 A.2d 1377 (1987). To invoke this rule in our courts, the State has to prove, by clear and convincing evidence, that specific investigatory procedures would have been pursued, that pursuit of those procedures would have inevitably resulted in discovery *825 of the evidence, and that such discovery would have occurred wholly independently of the discovery of the evidence by unlawful means. State v. Johnson, 120 N.J. 263, 289, 576 A.2d 834 (1990); State v. Sugar II, 100 N.J. 214, 238-40, 495 A.2d 90 (1985).
We conclude that this doctrine is inapplicable because the last two elements cannot be established. When the officer searched the fanny pack it was hardly inevitable that the witness at the "show-up" would provide any basis for further investigatory steps, and defendant might then have been released. Moreover, defendant was formally arrested at police headquarters only after the owner of the commuter vans appeared and identified the contents of the fanny pack as his, an identification that was necessarily a tainted fruit of the warrantless search.
In short, we conclude that the motion to suppress was incorrectly denied. We thus vacate defendant's conviction and remand for further proceedings.
Reversed and remanded.
NOTES
[1] We note that although this was not part of the record on the motion to suppress, at trial the principal of the entity that owned the burglarized vans identified the fanny pack worn around defendant's neck as belonging to one of his drivers and testified that the items taken from the burglarized vans had values which in the aggregate exceeded $1,200.
[2] We note additionally that the State makes no showing that less intrusive means could not have been adopted by the officer to protect himself while transporting defendant to the show-up identification, such as placing the fanny pack in the trunk of the police car for the drive to the crime scene.
[3] After the case had been submitted to us on September 10, 2002, we notified counsel, pursuant to Kimmel v. Dayrit, 154 N.J. 337, 342, 712 A.2d 1129 (1998) that we had raised an issue unaddressed by the parties: "namely, whether the search of the fanny bag in this case can be sustained as a search incident to arrest, as distinguished from a Terry patdown." We directed counsel, if they wished to file a supplemental brief on this point, to do so no later than Monday, October 7, 2002, by sending copies of the brief directly to each member of the panel. Counsel thereafter each submitted supplemental briefs, although the thrust of defendant's supplemental brief principally went to whether there was probable cause to arrest.