**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3148-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ELIJAH DOWNEY, a/k/a
ELIJAN DOWNEY,

     Defendant-Appellant.

_____

Submitted December 9, 2019 – Decided February 13, 2020

Before Judges Fasciale, Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Indictment No. 16-06-0525.

Joseph E. Krakora, Public Defender, attorney for appellant (Cody T. Mason, Assistant Deputy Public Defender, of counsel and on the brief).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Cristina Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Elijah Downey appeals from his conviction following a conditional retraxit plea of guilty to third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7), amended from count one of an indictment charging second-degree robbery, N.J.S.A. 2C:15-1(a)(1). Count two of the indictment, charging second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1(a)(1), was dismissed pursuant to the plea agreement.[1] On appeal, he argues the motion judge should have granted his suppression motion challenging the motor vehicle stop that resulted in the victim's show-up identification of defendant as one of his assailants. Specifically, he advances:

> POINT I
>
> THE OFFICERS DID NOT HAVE REASONABLE SUSPICION TO STOP DEFENDANT'S CAR SIMPLY BECAUSE IT WAS IN THE AREA AND WAS SIMILAR TO THE SUSPECTS' CAR WHEN THE VICTIM SAID THE SUSPECTS HAD ALREADY LEFT THE AREA, OTHER SIMILAR CARS WERE NEARBY, AND THE OCCUPANTS OF THE CAR DID NOT MATCH THE DESCRIBED SUSPECTS.

Defendant adds:

---

[1] Another four-count complaint warrant, not the subject of this appeal, was also dismissed.

<u>POINT II</u>

A REMAND IS NEEDED TO AWARD DEFENDANT
SEVEN DAYS OF JAIL CREDIT.

We are unpersuaded and affirm the denial of defendant's motion to suppress evidence but remand for the trial judge to address the jail credits to which defendant may be entitled.

Our review of the record confirms the following findings of fact—made by Judge Stephen J. Taylor after an evidentiary hearing, during which two officers testified and the judge viewed body-camera footage—are supported by the record evidence, including the testimony of a Morristown police sergeant whom the judge found to be credible. The victim of the robbery was walking on Sussex Avenue in Morristown in the early-morning hours when he noticed a dark-colored sedan following him. Two men exited the vehicle and accosted him. Although the victim ran, the two caught and assaulted him. He eventually escaped, but the perpetrators took his phone.

The victim called police from a nearby sandwich shop, prompting the response of a Morristown police sergeant to the victim's location at approximately 1:37 a.m. As interpreted by another police officer, the Spanish-speaking victim told the sergeant of the encounter and described the assailants who exited the dark-colored sedan as a black male and a Hispanic male.

A-3148-17T3

About two minutes after the sergeant arrived at the scene—at approximately 1:40 a.m.—he observed a dark-colored sedan (the suspect vehicle) traveling "very slowly" southbound on Sussex Avenue, towards Speedwell Avenue. The four occupants of the vehicle, all of whom the sergeant believed to be black males, "were looking very intently" at the sergeant. The sergeant asked the victim if "that was the vehicle." The sergeant testified the victim "indicated it could be."

The sergeant then broadcast the vehicle's license plate. The vehicle, in which defendant was a passenger, was stopped by another officer shortly thereafter. Police transported the victim to the vehicle. He identified defendant and a juvenile passenger as the two who attacked him.

We defer to the judge's factual findings on a motion to suppress, "unless they were 'clearly mistaken' or 'so wide of the mark' that the interests of justice require[] appellate intervention." State v. Elders, 192 N.J. 224, 245 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007)). We owe "deference to those findings of the trial judge [that] are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Locurto, 157 N.J. 463, 471 (1999) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

A-3148-17T3

In State v. S.S., our Supreme Court extended that deferential standard of review to "factual findings based on a video recording or documentary evidence" to ensure that New Jersey's trial courts remain "'the finder of the facts[.]'" 229 N.J. 360, 381 (2017) (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1985 amendment). The Court explained that "[p]ermitting appellate courts to substitute their factual findings for equally plausible trial court findings is likely to 'undermine the legitimacy of the [trial] courts in the eyes of litigants, multiply appeals by encouraging appellate retrial of some factual issues, and needlessly reallocate judicial authority.'" Id. at 380-81 (second alteration in original) (quoting Fed. R. Civ. P. 52(a) advisory committee's note to 1985 amendment). The trial court's application of its factual findings to the law, however, is subject to plenary review. State v. Cryan, 320 N.J. Super. 325, 328 (App. Div. 1999).

Recognizing the United States Supreme Court's holding in Terry v. Ohio, 392 U.S. 1 (1968), our Supreme Court held "that the reasonableness of the police conduct in conducting an investigatory stop in light of the Fourth Amendment could be generally assessed by 'balancing the need to search (or seize) against the invasion which the search (or seizure) entails.'" State v. Arthur, 149 N.J. 1, 7 (1997) (quoting Terry, 392 U.S. at 21). The Arthur Court, quoted from Terry at length in determining:

The facts used in that balancing test are to be judged objectively: "[W]ould the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" [Terry, 392 U.S.] at 21-22. When determining if the officer's actions were reasonable, consideration must be given "to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." Id. at 27. Neither "inarticulate hunches" nor an arresting officer's subjective good faith can justify an infringement of a citizen's constitutionally guaranteed rights. Id. at 21. Rather, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." Ibid.

[Arthur, 149 N.J. at 7-8 (third alteration in original).]

The same test applies to the investigatory stop of an automobile. Id. at 9. An automobile stop is justified if police "could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity." United States v. Cortez, 449 U.S. 411, 421-22 (1981); see also Arthur, 149 N.J. at 9. Investigative stops are justified, even absent probable cause, "if the evidence, when interpreted in an objectively reasonable manner, shows that the encounter was preceded by activity that would lead a reasonable police officer to have an articulable suspicion that criminal activity had occurred or would shortly occur." State v. Davis, 104 N.J. 490, 505 (1986). Courts are to determine whether the totality of the circumstances gives rise to an "articulable [and] particularized

suspicion" of criminal activity, not by use of a strict formula, but "through a sensitive appraisal of the circumstances in each case." Ibid.

Our Supreme Court recognized the two-step analysis set forth in Cortez,

> for determining whether the totality of circumstances creates a "particularized suspicion." A court must first consider the officer's objective observations. The evidence collected by the officer is "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." "[A] trained . . . officer draws inferences and makes deductions . . . that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities." Second, a court must determine whether the evidence "raise[s] a suspicion that the particular individual being stopped is engaged in wrongdoing."
>
> [Davis, 104 N.J. at 501 (first and third alterations in original) (citations omitted) (quoting Cortez, 449 U.S. at 418).]

The Arthur Court noted the refinement of that standard by the United States Supreme Court, which explained:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [Terry] recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information,

may be most reasonable in light of the facts known to the officer at the time.

[Arthur, 149 N.J. at 8 (quoting Adams v. Williams, 407 U.S. 143, 145-46 (1972)).]

Under that lens, we agree with Judge Taylor's well-reasoned written opinion, that the totality of the circumstances presented the police with a reasonable and articulable suspicion that the suspect vehicle in which defendant was a passenger was involved in the assault of the victim. Those circumstances include the victim's general description of the suspect vehicle which matched the dark-colored sedan in which defendant was a passenger and the proximity of the suspect vehicle to the location and time of the assault. See State v. Reynolds, 124 N.J. 559, 569 (1991) (recognizing a "defendant's proximity to the crime in both time and space," as well as his or her "similarity to the general description of the suspect," are relevant factors in determining the establishment of a reasonable suspicion). We note that the sergeant said it took him less than two minutes to respond to the call and he was at the scene less than two minutes when the suspect car passed.

The judge also credited the sergeant's testimony that he found the slow speed of the suspect vehicle and the intent gaze of its four occupants to be unusual. The judge considered defendant's contention—also advanced to us—

that the occupant's "behavior [was] common given the proclivity of people to stare or 'rubberneck' at police activity or accidents[.]"  Judge Taylor properly viewed the occupants' actions "through the experience and knowledge of [the sergeant] and the circumstances under which it occurred,"  under the guidance provided by our Supreme Court:

> In evaluating the facts giving rise to the officer's suspicion of criminal activity, courts are to give weight to "the officer's knowledge and experience" as well as "rational inferences that could be drawn from the facts objectively and reasonably viewed in light of the officer's expertise."  The fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as "a reasonable person would find the actions are consistent with guilt."
>
> [State v. Citarella, 154 N.J. 272, 279-80 (1998) (citation omitted) (quoting Arthur, 149 N.J. at 10-11).]

We see no reason to disturb Judge Taylor's conclusion:  "Given the location, time of day, relative closeness in time and space to the robbery, as well as the fact that the passing vehicle matched a description of the vehicle involved in the robbery, [the sergeant's] conclusions regarding the actions of the occupants was not improper."  See Arthur, 149 N.J. at 4, 11 (recognizing one factor in determining whether an investigatory stop was justified is a trained officer's view that a woman was looking around "really suspiciously"); State v.

<u>Dunbar</u>, 434 N.J. Super. 522, 527-28 (App. Div. 2014) (continuously looking at police is a factor in determining whether an investigative stop is justified); <u>State v. Butler</u>, 278 N.J. Super. 93, 104 (App. Div. 1994) (the lateness of the hour is another factor); <u>see also</u> <u>State v. Todd</u>, 355 N.J. Super. 132, 138 (App. Div. 2002). The judge also found the most compelling factor justifying the stop: The victim, when viewing the suspect vehicle, said it might be the car.

We are not persuaded by defendant's argument that the judge's "ruling was mistaken because it overlooked important contextual facts." Instead of considering the totality of the circumstances, defendant parses the facts of the case.

Defendant first argues it was natural for the occupants of the suspect vehicle to slow down and look at the three to five police officers on the scene. Besides the credited testimony of the sergeant about the occupants' "unusual" interest in the scene, we note that the sergeant also confirmed that the police activity was not particularly conspicuous. None of the police vehicles' emergency lights were activated.

Defendant also contends the victim told police the suspects "fled the area" before police arrived, and that the suspect vehicle was not leaving the scene of the crime, thereby rendering the suspect vehicle's presence near the crime scene

A-3148-17T3

unsuspicious. He further asserts that police ignored another car, similar to that described by the victim, that also passed the victim and sergeant as they stood on Sussex Avenue in the early-morning hours. Defendant's argument that the perpetrators would not be in the area after commission of the crime is speculative and unsupported by any facts in the record. And the other car that passed did not slow or look at the police activity as did the suspect vehicle and its occupants.

Moreover, these arguments ignore what the Stovall Court said was clear: "[P]olice may rely on characteristics consistent with both innocence and guilt in formulating reasonable suspicion." State v. Stovall, 170 N.J. 346, 369 (2002). "Even if all of the factors were susceptible of 'purely innocent' explanations, a group of innocent circumstances in the aggregate can support a finding of reasonable suspicion." Id. at 368.

Nor do the inconsistencies defendant alleges in the victim's description of the suspects draw into question the judge's conclusion. Although the victim described his attackers as one black male and one Hispanic male, as was made abundantly clear during the sergeant's testimony at the evidentiary hearing, the victim did not describe the occupants of the vehicle, only the two who exited

the vehicle and attacked him.[2]  He did not even tell police the number of occupants in the vehicle.  And, although the sergeant initially thought there were four black males in the suspect vehicle, whereas it was later determined one of the occupants was female, the sergeant admitted he could not see into the suspect vehicle well enough to determine whether the occupants were black or Hispanic.

The judge considered the evidence and correctly analyzed the totality of the circumstances in determining police were justified in stopping the suspect vehicle.  There is no reason to overturn his sound analysis and conclusion denying defendant's suppression motion.

Defendant seeks jail credits from his arrest on June 18, 2018.  He was initially sentenced on December 15, 2017 to a three-year probationary term conditioned on incarceration in the county jail for 364 days.  He violated the conditions of probation and, on September 21, 2018, was continued on probation which was extended for one year.  That sentence ran concurrent to an accusation (18-08-00634-A) on which defendant was sentenced to a one-year probationary sentence and a warrant (W-2018-000174-1424) on which he was sentenced to 103 days in the county jail, with credit for that amount as time served.

---

[2]  We see no evidence in the record of the complexion of the suspect vehicle's occupants; only that the victim identified defendant and the juvenile occupant as his assailants.

Although the September 2018 judgment of conviction (JOC) sets forth the original charges under the indictment here under consideration, and the complaint-warrant that was dismissed in connection with defendant's plea under that indictment, it does not list the charges under the newer accusation and warrant. The jail credits listed in the September 2018 JOC, in addition to those awarded when defendant was sentenced in December 2017, are from: May 8, 2018 to May 14, 2018 and June 25, 2018 to September 21, 2018. The December 11, 2017 presentence report contained in the record predates the violation of probation and the dates for which defendant now seeks credits; and the warrant numbers on the commitment summary defendant appended to his merits brief do not match the warrant numbers on the presentence report. Although an Inmate Lookup List provided by defendant shows a June 18, 2018 commitment date, it does not indicate the concomitant charge. In short, we are unable to ascertain from the record if defendant is entitled to the additional credits. We, therefore, remand this matter for the trial judge to address that issue; the State does not oppose that action.

Affirmed in part; remanded to address defendant's contention that he is entitled to jail credits from June 18, 2018 to June 24, 2018. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3148-17T3