**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2500-18T1

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

JAMIL K. GERALD,

      Defendant-Appellant.

_____

Submitted July 13, 2020 – Decided July 29, 2020

Before Judges Suter and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment Nos. 15-03-0847 and 16-01-0191.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the briefs).

Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Nicole Lynn Campellone, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Following denial of his motion to suppress evidence, defendant Jamil K. Gerald pled guilty to second-degree unlawful possession of a firearm, contrary to N.J.S.A. 2C:39-5b.[1] Defendant was sentenced to an aggregate prison term of five years with parole ineligibility for three-and-a-half years.

In his appeal, defendant argues:

POINT I

THE DEFENDANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES AS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ART. I., PAR., 7 OF THE NEW JERSEY CONSTITUTION WAS VIOLATED.

A. The defendant was unlawfully seized.

B. The facts contained in the affidavit supporting the search warrant are insufficient to establish probable cause.

POINT II

THE DEFENDANT IS ENTITLED TO DE NOVO REVIEW, AND NO DEFERENCE SHOULD BE GIVEN TO THE ERRONEOUS CONCLUSION BELOW.

Applying our standard of review, we affirm the suppression order.

---

[1] Defendant also pled guilty to possession of a controlled dangerous substance (heroin) with intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1), under an unrelated indictment which is not the subject of this appeal.

A-2500-18T1

# I

At the motion to suppress hearing, the State presented the testimony of City of Pleasantville Police Officers Matthew Laielli and Brandon Stocks regarding the warrantless seizure and arrest of defendant and the search of the vehicle in which defendant was a passenger pursuant to a warrant. Laielli, a patrolman with eight years' experience, learned in early August 2014 from another police department that Ellis Huff, who was then residing at 152 East Adams Avenue in Pleasantville with family members, was repeatedly assaulted and stabbed by the street gang, the Bloods, in retaliation for an earlier dispute. Laielli testified that Huff had requested patrol checks "multiple times due to the threats that he received and the assaults that he took."

Laielli stated that during the early morning of August 24, 2014, while he was on duty, the Pleasantville Police Department received a call from a male resident of 152 East Adams Avenue. The individual reported that "a black male was outside his house, [wearing] dark clothing, [and] carrying a handgun." Laielli understood the caller to be Huff.

After receiving the call, five officers responded to the scene, including Laielli and Stocks. All officers approached on foot to avoid detection, with certain officers approaching from different directions. At approximately 2:30

a.m., while nearing 152 East Adams Avenue, Laielli observed a running car parked illegally in the opposite direction directly across the street from Huff's residence. Laielli testified that other cars were parked on the street, but that there was no foot traffic. Laielli and two other officers approached the vehicle with their firearms drawn and made the following observations:

> Due to the threat that we received or the information we received of the male with a handgun and it was a black male wearing a black shirt, we observed three black males inside the vehicle. They were all wearing dark clothing similar to what the victim – or caller described. We ordered all their hands up inside the vehicle so we could see their hands for officer safety.

Laielli also stated that when he approached the vehicle and ordered the occupants to place their hands up, one of the occupants stated that they "lived right there." Laielli advised him to listen to their commands so that they could "figure that out" but the police were not able to investigate promptly that claim further due to defendant's actions.

Specifically, although the occupants in the driver and front passenger seats complied with the officers' instructions "immediately," defendant, seated in the rear passenger seat, did not. Instead, Laielli testified that defendant "wouldn't listen to our command" and instead "constantly . . . was reaching around behind the passenger seat. He was reaching over to the driver's seat. He

4

was looking as if it was a joke and he wasn't paying attention." Laielli further explained that he "repeatedly[,] non-stop" ordered defendant to place his hands up but defendant refused to comply. Instead, he continued to place his hands down which "became a . . . safety [concern] for all officers on scene, a threat of a handgun."

Because of defendant's non-compliance, he was ordered out of the vehicle. Defendant did not initially comply but after repeated orders he stepped out of the vehicle by opening the door just so he could "squeeze[] his body . . . between the door and . . . the doorframe." As he exited the vehicle, defendant held his cellphone in the air to videotape the officers.

Once outside the vehicle, defendant continued to refuse to follow the officers' orders resulting in Stocks approaching him with his canine. After another officer attempted to place defendant in handcuffs, he pulled away from the officer's control. Defendant was then forced against the car, handcuffed, and taken into custody. Laielli stated that defendant was arrested at that moment for obstruction, although it does not appear from the indictment that he was formally charged with that offense. The other occupants, who kept their hands up and were sitting "calmly" were also removed from the car and detained.

After defendant's arrest, Laielli smelled the odor of burnt marijuana emanating from the open driver's side window. Another officer, using his handheld flashlight, observed from the exterior of the vehicle, a bulge in the rear passenger compartment pouch where defendant was sitting which Laielli believed could have been a handgun. In light of the smell of marijuana and his observation of the bulge in the compartment pouch, Laielli requested that the driver of the vehicle consent to a search. He declined.

As a result, Stocks' trained canine conducted an exterior sniff of the vehicle and gave an "aggressive indication" by barking and scratching at the rear passenger-side door. A tow truck then removed the vehicle to the police station. Laielli and Detective Miguel Lugo presented a municipal court judge with an affidavit in support of a request for the issuance of a search warrant which the court granted. After conducting a search of the vehicle, a handgun was discovered in the rear passenger compartment pouch.

The Law Division subsequently granted defendant's motion to suppress.[2] Before doing so, however, the court, relying on State v. Stovall, 170 N.J. 346 (2002), explained that the police were initially entitled to conduct a field inquiry

_____

[2] The other occupants of the vehicle were also indicted but all charges were dismissed at the time of defendant's plea and they have not participated in this appeal.

and to transform the initial encounter into an investigatory stop.  The court reasoned that the "police did not make [an] initial inquir[y] upon approaching the vehicle, nor did they ask individuals if they were willing to answer questions. Clearly, an objectively reasonable person would not feel free to leave and, therefore, the encounter constitutes an investigatory . . . detention."  The court further found that "[g]iven the observations of the caller, the location of the vehicle and the defendant, and the hour at which these events transpired, the totality of the circumstances" gave the police a "particularized suspicion based upon objective observation that the individuals sitting in their parked car had been or were about to engage in criminal wrongdoing."

The court, however, found Laielli signed the affidavit in the presence of the municipal court judge after having been duly sworn and that his execution of the affidavit constituted a deficiency that went "to the very heart of the process by which a judicial officer makes the determination whether to issue a search warrant" because he was not the officer "whose name is at the start of and in the body of the affidavit" and the affidavit included Lugo's background and training, and not Laielli's.  The court found the municipal court "judge relied upon a fundamentally flawed affidavit in issuing the search warrant" and entered an order granting defendants' motion to suppress.

The court accordingly did not reach defendant's claim that the alleged stop of the motor vehicle was unlawful and required the suppression of the evidence. The court also did not make any findings concerning whether the affidavit, if properly executed, alleged sufficient facts supporting the municipal judge's finding there was probable cause for the issuance of the warrant.

The State filed a motion for reconsideration. The court heard testimony from Laielli and Lugo concerning their presentation of the affidavit and search warrant to the municipal court judge, and Laielli's execution of the affidavit. The court denied the reconsideration motion, finding it was "integral to the process" that the judge issuing the warrant have knowledge of the "training and qualifications of the actual person who signed the affidavit." The court further explained that the "oath supporting" the affidavit was "basic and fundamental . . . to the process," and Laielli's execution of the affidavit resulted in an "insufficiency of the process by which the warrant was obtained."

We granted the State's motion for leave to appeal and reversed. See State v. Woodall, A-4201-15T, slip op. (App. Div. January 26, 2017). We concluded the "affidavit's erroneous identification of Lugo as the affiant was a technical irregularity that did not implicate the municipal judge's finding of probable cause" and found "no support in the record for the Law Division's conclusion

8

that Laielli's execution of the affidavit constituted a fundamental flaw resulting in an invalid search warrant." Id. at 5. We reasoned that "[u]nder the circumstances presented, there was no showing of bad faith and the error was an irregularity in the papers supporting the issuance of the warrant that did not require or permit the suppression of the evidence. R. 3:5–7(g)." Ibid. We therefore remanded for the court to consider the "legality of the alleged stop or whether the affidavit established probable cause." Id. at 7.

On remand, the Law Division denied the motion to suppress. Relying on State v. Smith, 134 N.J. 599 (1994), the court reiterated its earlier conclusion that defendant's detention was lawful, again stressing that defendant matched the description provided by the caller and that the totality of the circumstances gave rise for the officers to conduct an investigatory stop and later remove defendant from the vehicle. In addition, the court relied on the testimony of Laielli and Stocks that the officers detected a strong odor of marijuana which gave the officers reasonable suspicion to conduct the canine sniff which took place approximately a half hour after the officers arrived at the scene.

The court also concluded that probable cause existed to support the search warrant because based upon Laielli's testimony he had sufficient knowledge to provide the information contained in the affidavit. Further, it determined

sufficient information was contained in the affidavit regarding Stocks' qualifications and his actions, as well as those of the canine to support the warrant and the search of the vehicle.  The court rejected defendant's argument that the affidavit was defective because it did not contain information that the vehicle was parked near the home of the vehicle's owner as the affidavit "was largely based upon the positive indication" given by the canine.  This appeal followed.

## II.

In point one, defendant contends that the police seized defendant without reasonable suspicion.  He maintains they were aware from Huff's call that a "black man in a dark shirt was walking around alone with a gun" and defendant was found, not alone, but with two other individuals in the rear seat of a car and was not seen carrying a gun, and the uncorroborated facts observed by the police do not justify the police stopping "every black man they see."  We disagree that the police did not have reasonable suspicion to conduct an investigatory stop, and based on defendant's subsequent actions, to detain and arrest him.

Our review of the trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009).  "An appellate court reviewing a motion to suppress evidence in a criminal case must uphold the factual findings

underlying the trial court's decision, provided that those findings are 'supported by sufficient credible evidence in the record.'" State v. Boone, 232 N.J. 417, 425-26 (2017) (quoting State v. Scriven, 226 N.J. 20, 40 (2016)). We do so "because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "The governing principle, then, is that '[a] trial court's findings should be disturbed only if they are so clearly mistaken that the interests of justice demand intervention and correction.'" Robinson, 200 N.J. at 15 (alteration in original) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). "We owe no deference, however, to conclusions of law made by trial courts in deciding suppression motions, which we instead review de novo." State v. Brown, 456 N.J. Super. 352, 358-59 (App. Div. 2018) (citing State v. Watts, 223 N.J. 503, 516 (2015)).

Applying the de novo standard of review to the motion judge's legal conclusions, "[w]e review this appeal in accordance with familiar principles of constitutional law." State v. Robinson, 228 N.J. 529, 543 (2017). "Both the United States Constitution and the New Jersey Constitution guarantee an individual's right to be secure against unreasonable searches or seizures." State

A-2500-18T1

v. Minitee, 210 N.J. 307, 318 (2012) (citing U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7). Searches and seizures conducted without a warrant "are presumptively invalid as contrary to the United States and the New Jersey Constitutions." State v. Pineiro, 181 N.J. 13, 19 (2004) (citing State v. Patino, 83 N.J. 1, 7 (1980)). As such, "the State must demonstrate by a preponderance of the evidence[,]" id. at 20 (quoting State v. Wilson, 178 N.J. 7, 13 (2003)), that "[the search] falls within one of the few well-delineated exceptions to the warrant requirement[,]" id. at 19 (alteration in original) (quoting State v. Maryland, 167 N.J. 471, 482 (2001)). "Thus, we evaluate the evidence presented at the suppression hearing in light of the trial court's findings of fact to determine whether the State met its burden." Id. at 20.

Courts have recognized three types of encounters between police and citizens. The first is a field inquiry. Officers are permitted to make field inquiries "without grounds for suspicion." Maryland, 167 N.J. at 483 (quoting State v. Contreras, 326 N.J. Super. 528, 538 (App. Div. 1999)). If an officer initiates a field inquiry with an individual, "[t]he individual does not even have to listen to the officer's questions and may simply proceed on her own way." State v. Rosario, 229 N.J. 263, 271 (2017) (citing Florida v. Royer, 460 U.S. 491, 497-98 (1983)). "Because a field inquiry is voluntary and does not effect

a seizure in constitutional terms, no particular suspicion of criminal activity is necessary on the part of an officer conducting such an inquiry." Id. at 272 (citing Elders, 192 N.J. at 246).

The second, more intrusive police-citizen encounter is an investigative detention, sometimes called an investigatory stop or a Terry[3] stop. An investigative detention is a seizure in constitutional terms. Rosario, 229 N.J. at 272; Stovall, 170 N.J. at 356. "A police officer may conduct an investigatory stop if, based on the totality of the circumstances, the officer had a reasonable and particularized suspicion to believe that an individual has just engaged in, or was about to engage in, criminal activity." Stovall, 170 N.J. at 356 (citing Terry, 392 U.S. at 21). An officer's "reasonable and particularized suspicion" should be "based on the totality of the circumstances." Ibid. An officer's subjective, good-faith hunch does not justify an investigatory stop, even if that hunch proves correct. See State v. Arthur, 149 N.J. 1, 8 (1997).

The third and most intrusive police-citizen encounter is an arrest. An arrest "requires probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one." Rosario, 229 N.J. at 272 (citing State v. Brown, 205 N.J. 133, 144 (2011)).

---

[3] Terry v. Ohio, 392 U.S. 1 (1968).

13

Here, the parties agree that defendant's encounter with police was from its outset an investigatory stop. The question presented is whether the police had a "reasonable and particularized suspicion that [defendant had] just engaged in, or was about to engage in, criminal activity." Ibid. (alteration in original) (quoting Stovall, 170 N.J. at 356).

In the case before us, Laielli's reasonable suspicion was based upon the 911 call in which the individual stated that "a black male was outside his house, [wearing] dark clothing, [and] carrying a handgun," as well as Laielli's observations that at 2:30 a.m., there was a vehicle parked improperly outside the residence and that the three black males in the vehicle were wearing dark clothing.[4] We conclude that those facts suffice to constitute a lawful investigatory stop. See State v. Reynolds, 124 N.J. 559, 569 (1991) (concluding that reasonable suspicion existed where the defendant matched a description by the victim and was located by an officer near the crime scene shortly thereafter); State v. Todd, 355 N.J. Super. 132, 138 (App. Div. 2002) (finding an investigative stop lawful where the defendant matched the height, weight, and

---

[4] We acknowledge that the officers were told, and later confirmed, that the car was parked outside the driver's residence. While they were told this fact early in the investigatory detention, as noted, defendant's actions prevented any ability of the officers to investigate that claim further in light of the concern for officer safety.

clothing of a description given of a car burglar, was spotted in the vicinity of the burglaries minutes after they were reported, was the only person walking on that street at 3:30 a.m., and appeared nervous); State v. Gavazzi, 332 N.J. Super. 348, 357 (App. Div. 2000) (determining investigatory stop of the defendant's car was proper where the defendant matched the height and clothes of the alleged robber, the officers saw the car traveling away from the scene six minutes after the crime, and the car was the only vehicle on the road); State v. Anderson, 198 N.J. Super. 340, 347 (App. Div. 1985) (finding that a vehicle stop of two black males was proper where the car was the only vehicle on the road at 1:30 a.m. in the area of a robbery shortly after the crime was reported and dispatch reported three armed black males).

We acknowledge situations in which courts have held that an individual's similarity to a very general description given in a dispatch or warrant does not by itself justify an investigative detention. See, e.g., State v. Shaw, 213 N.J. 398, 401-11 (2012) (affirming reversal of trial court's denial of motion to suppress evidence seized during a stop where defendant's only similarity to fugitive police sought was that he was "a black male"); State v. Caldwell, 158 N.J. 452 (1999) (reversing denial of suppression where the only information officer had was that the suspect was a black male at a certain address); State v.

Stampone, 341 N.J. Super. 247, 249-52 (App. Div. 2001) (finding investigatory stop unlawful because "[a] car parked on a residential street at 5:00 p.m., occupied by a person with no unusual personal characteristics, is not suspicious" regardless of out-of-state license plates or "[a] person's failure to make eye contact with the police").

The totality of the circumstances presented at the suppression hearing, however, bear no substantive resemblance to these situations. In this regard, we agree with the court that the police had a "particularized suspicion . . . to conduct an investigatory stop" based on the objective facts that the individuals sitting in the car had been or were about to engage in criminal conduct. See State v. Shaw, 237 N.J. 588, 612 (2019). The police did not commence the investigatory stop of defendant simply based on his race as he contends but because a known 911 caller, recently attacked and stabbed by a gang, identified a black man with dark clothing carrying a gun outside his home. Defendant and two others who matched the description of the 911 caller and who were all wearing dark clothing were in a vehicle directly across the street from Huff's residence in an illegally parked running vehicle early in the morning in an area without any other foot traffic. The police in such circumstances were entirely justified in conducting

an investigatory stop and, based on defendant's subsequent actions, detaining and arresting him.

III.

We also disagree with defendant's second point in which he claims that there were insufficient facts in the affidavit to support the court's probable cause finding because "[u]nless there is further evidence of drug dealing . . . an odor in a car does not establish that the vehicle itself contains marijuana." As we explained in our earlier opinion:

> "[A] defendant challenging a warrant 'has the burden to prove that there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable.'" State v. Marshall, 199 N.J. 602, 612 (2009) (quoting State v. Jones, 179 N.J. 377, 388 (2004)). The United States and New Jersey Constitutions provide that search warrants shall not issue except upon a finding of probable cause supported by oath or affirmation. U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7. Probable cause exists where there is "a reasonable ground for belief of guilt" based on facts of which the officers had knowledge and reasonably trustworthy sources. Marshall, 199 N.J. at 610 (quoting State v. O'Neal, 190 N.J. 601, 612 (2007)). To determine probable cause for a search warrant, the decision "must be made based on the information contained within the four corners of the supporting affidavit, as supplemented by sworn testimony before the issuing judge that is recorded contemporaneously." Id. at 611 (quoting Schneider v. Simonini, 163 N.J. 336, 363 (2000), cert. denied, 531 U.S. 1146, 121 S. Ct. 1083, 148 L. Ed. 2d 959 (2001)). "[S]earch warrants

17

must be based on sufficient specific information to enable a prudent, neutral judicial officer to make an independent determination that there is probable cause to believe that a search would yield evidence of past or present criminal activity." State v. Keyes, 184 N.J. 541, 553 (2005).

[Woodall, slip. op. at 8-9.]

Defendant claims simply because Laielli testified to smelling burnt marijuana emanating from the vehicle did not mean "there is any left, and it does not mean that the vehicle may be searched lawfully." Relying on State v. Patino, 83 N.J. 1 (1980), defendant claims that the smell of marijuana and the confirmatory reactions from the canine merely established that marijuana was smoked in the vehicle and "not that the vehicle itself contained marijuana" and without "additional evidence of distribution, as required by Patino, there was no probable cause to search the vehicle." We find this argument so lacking in merit that it does not warrant extended discussion in a written opinion. See R. 2:11-3(e)(2).

Suffice to say, the affidavit avers that the officers responded to the scene "in reference to a male subject in possession of a handgun within the area of the residence." Further, the affidavit states that defendant was the rear passenger and raised "his hands and quickly lower[ed] them and continued to reach for the rear of the driver and passenger seats" in violation of repeated requests "to raise

[his] hands for officer safety." And, not only did the police smell marijuana, the canine "gave a positive indication of a controlled dangerous substance within the area of the rear passenger side of the vehicle" directly where defendant was sitting. In addition, the officers "observed in plain view a large bulge in the rear seat compartment behind the front passenger seat." Those facts established more than sufficient probable cause for the issuance of the warrant to search defendant's vehicle.

Under our deferential standard of review, we are satisfied the judge's factual findings are based upon credible evidence in the record and we will not disturb them. We further conclude the judge properly applied those facts to the law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION